# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| BRYAN P. SPENCE, individually and as a representative of a class of similarly situated persons, and on behalf of the AMERICAN AIRLINES, INC. 401(K) PLAN and the AMERICAN AIRLINES, INC. 401(K) PLAN FOR PILOTS, | § § § § § § § § | Case No. _____ |
| Plaintiffs, | § § | |
| v. | § § | **CLASS ACTION COMPLAINT** |
| AMERICAN AIRLINES, INC., the AMERICAN AIRLINES EMPLOYEE BENEFITS COMMITTEE, FIDELITY INVESTMENTS INSTITUTIONAL, and FINANCIAL ENGINES ADVISORS, LLC, | § § § § § § § | |
| Defendants. | § § | |

> Many American workers don't realize that their hard-earned money is being used against them. Firms whose job is to deliver investment returns are instead weaponizing retirement funds, public pensions and other investments in pursuit of nakedly ideological goals. It is perhaps the most severe breach of the fiduciary standard in American history.

Marlo Oaks & Todd Russ, Editorial, *A Historic Breach of Fiduciary Duty*, Wall St. J., May 15, 2023.

Plaintiff Bryan P. Spence, individually and as representative of a class of participants and beneficiaries of the American Airlines, Inc. 401(k) Plan and the American Airlines, Inc. 401(k) Plan for Pilots (collectively, the "Plan"), brings this action under the Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"), against Defendants American Airlines, Inc. ("American Airlines"), American Airlines Employee Benefits Committee (the "Employee Benefits Committee"), Fidelity Investments Institutional ("Fidelity"), and Financial Engines Advisors, LLC ("Financial Engines") (collectively, "Defendants"). Defendants have breached their fiduciary duties in violation of ERISA by investing millions of dollars of American Airlines employees' retirement savings with investment managers and investment funds that pursue leftist political agendas through environmental, social and governance ("ESG") strategies, proxy voting, and shareholder activism—activities which fail to satisfy these fiduciaries' statutory duties to maximize financial benefits in the sole interest of the Plan participants. The unlawful decision to pursue unrelated policy goals over the financial health of the Plan is not only flatly inconsistent with Defendants'

fiduciary responsibilities, it jeopardizes the retirement security of hundreds of thousands of American Airlines employees. Plaintiff brings this lawsuit to remedy Defendants' breaches of fiduciary duties and for injunctive relief to prevent further violations and mismanagement of the Plan.

## INTRODUCTION

1.      ERISA imposes strict fiduciary duties of loyalty and prudence upon employers and other ERISA fiduciaries. 29 U.S.C. § 1104(a)(1). These fiduciary duties are "'the highest known to the law.'" *In re Enron Corp. Securities, Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 549 (S.D. Tex. 2003) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)). ERISA fiduciaries must act "*solely* in the interest of participants and beneficiaries and . . . for the *exclusive purpose* of providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1) (emphasis added).

2.      Defendants maintain the American Airlines 401(k) Plan and the American Airlines 401(k) Plan for Pilots and are fiduciaries under ERISA. As such, Defendants owe specific duties to the Plan and its participants and beneficiaries, including duties of loyalty and prudence to design and select a portfolio of funds to offer as investment options, and a continuing fiduciary duty to monitor, and, if necessary, alter the investment options available to Plan participants.

3.      Defendants have selected and included as investment options numerous investment funds that pursue ESG policy goals through their

3

investment strategies, proxy voting, and shareholder activism. Many of these ESG funds publicly disclose that their investment strategies exclude or screen out companies and potential investment opportunities that do not meet certain ESG standards.

4.   And many of the ESG funds that Defendants have included in the Plan are more expensive for Plan participants to own compared with similar non-ESG investment funds, underperform financially compared with similar non-ESG investment funds, and engage in shareholder activism to achieve ESG policy agendas rather than maximize the risk-adjusted financial returns for Plan participants.

5.   Defendants have also selected and included as investment options funds that are managed by investment companies that pursue ESG policy agendas through proxy voting and shareholder activism. Many of these funds are not branded or marketed as ESG funds; however, the actions of their investment advisors and managers give rise to the same ERISA violations as those funds that do market themselves as ESG funds.

6.   Defendants have breached their fiduciary duties of loyalty to the Plan and the Plan participants and beneficiaries by selecting and retaining as investment options under the Plan ESG funds and funds that are managed by investment companies that pursue ESG objectives through proxy voting and shareholder activism. Defendants are prohibited from including these funds in the Plan because ERISA mandates that the *exclusive purpose* of Plan

investments is to maximize *financial* benefits for participants and beneficiaries. Defendants have violated ERISA by selecting and retaining ESG funds that pursue nonfinancial or nonpecuniary objectives like ESG social policy objectives, rather than investment funds that have the exclusive purpose of maximizing financial returns for investors.

7.     Defendants have also breached their fiduciary duties of prudence to the Plan and Plan participants by selecting and retaining poorly performing and more expensive ESG funds as investment options, and by failing to investigate and monitor the ESG funds' proxy voting and shareholder activism. The ESG funds Defendants included and retained as investment options have been largely imprudent holdings that should be removed from the Plan. A prudent fiduciary would have removed these funds, but the Plan's fiduciaries have failed to do so, costing the Plan participants millions of dollars in lost earnings they would have earned had the Plan's fiduciaries offered more prudent investments that were readily available at the time Defendants selected and retained the ESG funds at issue.

8.     These imprudent investment choices were not the result of mere negligence or oversight. To the contrary, Defendants selected the ESG funds and included them as investment options with knowledge of their nonfinancial investment objectives, higher costs of owning ESG funds, poor financial performance of ESG funds, and ESG fund shareholder activism to achieve social policy changes rather than maximize the risk adjusted financial returns

for investors. Defendants selected these funds and continued to hold them within the Plan after they had become imprudent to further their own preferences and interests.

9.      Defendants have (a) failed to act solely in the interest of the participants and beneficiaries of the Plan for the exclusive purpose of providing them financial benefits, in violation of ERISA, 29 U.S.C. § 1104(a)(1)(A); (b) failed to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA, 29 U.S.C. § 1104(a)(1)(B); and (c) failed to monitor the performance of the Plan's fiduciaries and investments. Defendants breached their fiduciary duties to the Plan and the Plan participants and are liable to restore all losses to the Plan resulting from their breaches, as alleged more particularly herein.

10.      To remedy these fiduciary breaches and other violations of ERISA, Plaintiff brings this action individually and as representative of the proposed class of Plan participants and beneficiaries, to recover and obtain all losses resulting from each breach of fiduciary duty, and for injunctive relief to prevent ongoing and future violations of ERISA arising from Defendants including ESG investment options in the Plan.

11.      Pursuant to 29 U.S.C. §§ 1109 and 1132, Plaintiffs seek to recover the following:

(a)  A declarative judgment that the actions and omissions of Defendants described herein violate ERISA and applicable law;

(b)  A permanent injunction against Defendants prohibiting the practices described herein and affirmatively requiring them to remove from the Plan all investment options that use ESG investment strategies;

(c)  Equitable, legal or remedial relief for all losses and/or compensatory damages;

(d)  Attorneys' fees, costs and other recoverable expenses of litigation; and

(e)  Such other and additional legal or equitable relief that the Court deems just.

## JURISDICTION & VENUE

12.     Plaintiff brings this action pursuant to 29 U.S.C. § 1132(a)(2) and (3) which provide that participants in an ERISA employee retirement plan may pursue a civil action on behalf of the plan to remedy breaches of fiduciary duties and other prohibited conduct and to obtain monetary and equitable relief as set forth in 29 U.S.C. §§ 1109 and 1132.

13.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332 because this lawsuit presents a federal question under ERISA.

14.     Venue is proper in the Northern District of Texas pursuant to 29 U.S.C. § 1332(e) and 28 U.S.C. § 1391 because American Airlines, Inc.'s

principal place of business is in this judicial district, the Plan is administered in this judicial district, and a substantial part of the acts and omissions giving rise to the claims asserted herein occurred in this judicial district.

## PARTIES

### A.   Plaintiffs

15.     Plaintiff Bryan P. Spence is an American Airlines pilot. He is also a Lieutenant Colonel in the United States Air Force currently in his 20th year of service as a F-16 Instructor Pilot at Naval Air Station Joint Reserve Base Fort Worth. He resides in Aledo, Texas and is a current participant in the Plan. Over the past six years he has been invested in one or more of the funds and investment options included in the Plan. He has suffered financial harm and has been injured by Defendants' unlawful conduct as described herein.

16.     Plaintiff has standing to bring this action because he maintained investments in the Plan during the Class Period. ERISA authorizes any participant to bring suit as a representative of a plan, with any recovery necessarily flowing to the plan. 29 U.S.C. § 1132(a)(2). As explained herein, the Plan has suffered millions of dollars in losses because of Defendants' fiduciary breaches and the Plan remains vulnerable to continuing harm.

### B.   Defendants

### American Airlines, Inc. ("American Airlines")

17.     Defendant American Airlines, Inc. is the "plan sponsor" within the meaning of 29 U.S.C. § 1002(16)(B). American Airlines is headquartered in

Fort Worth, Texas, in the Northern District of Texas, and is a subsidiary of American Airlines Group, Inc., formerly known as AMR Corp. American Airlines was previously the plan administrator, with general oversight responsibilities for the entire Plan. As plan administrator, American Airlines was a fiduciary. *See* 29 C.F.R. § 2509.75-8 at D-3. American Airlines was also a named fiduciary pursuant to 29 U.S.C. § 1102(a). American Airlines, through its corporate officers, was responsible for appointing and removing members of the American Airlines Employee Benefits Committee. These appointment and monitoring duties carried a corresponding duty to take action upon discovery that any Plan fiduciary was not performing its duties properly and in accordance with ERISA. These duties and responsibilities conferred a fiduciary status upon American Airlines pursuant to 29 U.S.C. § 1002(21)(A). *See In re Enron Corp. Securities, Deriv. & ERISA Litig.*, 284 F. Supp. 2d 511, 553 (S.D. Tex. 2003) (collecting cases) ("A person or entity that has the power to appoint, retain and/or remove a plan fiduciary from his position has discretionary authority and control over the management or administration of the plan and is a fiduciary to the extent that he or it exercises that power."). Additionally, as the Plan sponsor, Plan administrator, and entity responsible for appointing and removing members of the American Airlines Employee Benefits Committee, American Airlines had knowledge of the fiduciary breaches committed by the other Defendants, and did not make reasonable efforts under the circumstances to remedy those breaches.

**American Airlines Employee Benefits Committee ("Employee Benefits Committee")**

18.     Defendant American Airlines Employee Benefits Committee was named as the plan administrator and fiduciary of the Plan prior to recent amendments to the Plan. In this role, the Employee Benefits Committee was responsible for selecting, monitoring, and removing the Plan's designated investment alternatives. The Employee Benefits Committee was also responsible for selecting and monitoring the Plan's administrative service providers, including the Plan's recordkeeper and trustee. More broadly, the Employee Benefits Committee had general oversight responsibility for the operation of the Plan. The Employee Benefits Committee was a named fiduciary under the Plan and pursuant to 29 U.S.C. § 1102(a). The Employee Benefits Committee also exercised discretionary authority and discretionary control over management of the Plan, administration of the Plan, and management and disposition of the Plan's assets, and therefore is a fiduciary pursuant to 29 U.S.C. § 1002(21)(A).

**Fidelity Investments Institutional ("Fidelity")**

19.     Defendant Fidelity Investments Institutional is named as the Plan administrator under the most recent amendment of the Plan. In this role, Fidelity is responsible for selecting, monitoring and removing the Plan's designated investment options. Fidelity is also responsible for selecting and monitoring the Plan's administrative service providers, including the Plan's recordkeeper and trustee. More broadly, Fidelity has general oversight

responsibility for the operation of the Plan. Fidelity is a named fiduciary under the Plan and pursuant to 29 U.S.C. § 1102(a). Fidelity also exercises discretionary authority and discretionary control over management of the Plan, administration of the Plan, and management and disposition of the Plan's assets, and therefore is a fiduciary pursuant to 29 U.S.C. § 1002(21)(A). Fidelity is also an "investment manager" of the Plan as defined by 29 U.S.C. § 1002(38). In that role, Fidelity is responsible for selecting the investment options to be included in the Plan and monitoring those investments to ensure that they remain prudent. As such, Fidelity is a named fiduciary of the Plan pursuant to 29 U.S.C. § 1002(38) and a functional fiduciary pursuant to 29 U.S.C. § 1002(21)(A).

**Financial Engines Advisors, LLC ("Financial Engines")**

20.     Defendant Financial Engines Advisors, LLC is an investment advisor selected by the other Defendants to provide investment advice to Plan participants on how Plan assets should be invested and managed. Financial Engines receives substantial direct and indirect compensation for providing investment advice and management services to Plan participants. Financial Engines is an "investment manager" of the Plan as defined by 29 U.S.C. § 1002(38) and a functional fiduciary of the Plan pursuant to 29 U.S.C. § 1002(21)(A).

21.     Each Defendant identified above as a Plan fiduciary is also subject to co-fiduciary liability under 29 U.S.C. §§ 1105(a)(1)-(3) because it

enabled other fiduciaries to commit breaches of fiduciary duties, failed to comply with 29 U.S.C. § 1104(a)(1) in the administration of its duties, and/or failed to make reasonable efforts to remedy other fiduciaries' breaches of their duties, despite having knowledge of those breaches.

22.     American Airlines, the Employee Benefits Committee, Fidelity, and Financial Engines all possessed authority pursuant to the operative Plan documents to delegate their responsibilities to any other person, persons, or entity. Any individual or entity to whom these Defendants delegated any of their fiduciary functions or responsibilities are also fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and 1105(c)(2).

## FACTUAL BACKGROUND

### A.     The Plan

23.     The Plan is a retirement plan for employees of American Airlines and participating subsidiaries of its parent corporation. This includes all American Airlines agents, management, and support staff employees, Transport Worker Union employees, flight attendants, and pilots. With over 100,000 participants and approximately $26 billion in assets, the Plan is one of the largest retirement plans in the country.

24.     On October 13, 2015, American Airlines amended and restated the American Airlines, Inc. 401(k) Plan, effective October 27, 2015. Effective October 27, 2015, American Airlines established the American Airlines, Inc. 401(k) Plan for Pilots. The American Airlines, Inc. 401(k) Plan for Pilots was

created by the merger of certain assets from the American Airlines, Inc. 401(k) Plan sponsored by American Airlines with all the assets from the Future Care 401(k) Plan and the US Airways, Inc. 401(k) Savings Plan for Pilots sponsored by US Airways, Inc. The American Airlines, Inc. 401(k) Plan for Pilots was amended effective January 1, 2016. The American Airlines, Inc. 401(k) Plan and the American Airlines, Inc. 401(k) Plan for Pilots are the two participating plans of the Master Trust for DC Plans of American Airlines, Inc. and Affiliates, collectively referred to herein as "the Plan."

25.     The Plan is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A) and a "defined contribution plan" within the meaning of 29 U.S.C. § 1002(34). The Plan is a qualified plan under 26 U.S.C. § 401, and is of the type commonly referred to as a "401(k) plan."

26.     A defined contribution plan is a type of employee retirement plan in which employees invest a percentage of their earnings on a pre-tax basis. The employer often matches those contributions up to a certain percentage of the compensation contributed by the employee each pay period.

27.     Within the Plan, employees may defer a percentage of their compensation on a pre-tax basis (subject to annual contribution limits), and American Airlines matches those contributions up to a percentage of the employee's salary, depending on the type of employee, and employees are free to make their own contributions in addition within the IRS limits. Employees

who do not make an election to contribute to the Plan are automatically enrolled at a specified contribution level.

28.   Participants in a defined contribution plan are responsible for directing the investment of these contributions, choosing from among a lineup of options offered by the Plan. As a result, the investment lineup determined by the Plan's fiduciaries is critical to participants' investment results, and ultimately, to the retirement benefits they receive.

29.   In a defined contribution plan, fiduciaries are obligated to assemble a diversified menu of designated investment alternatives. 29 U.S.C. § 1104(a)(1)(C); 29 C.F.R. § 2550.404c-1(b)(1)(ii). A "designated investment alternative" is defined as "any investment alternative designated by the plan into which participants and beneficiaries may direct the investment of assets held in, or contributed to, their individual accounts." 29 C.F.R. § 2550.404a-5(h)(4).

30.   Each investment option within a defined contribution plan is generally a pooled investment product—which includes mutual funds, collective investment trusts, and separate accounts. These pooled investment products generally offer investors exposure to a particular asset class or sub-asset class.

31.   The broad asset classes generally include fixed investments, bonds, stocks, and occasionally real estate. Money market funds, guaranteed investment contracts, and stable value funds are examples of fixed

14

investments. Bonds are debt securities, which are generally categorized by the issuer/borrower (U.S. Government, foreign governments, municipal corporations), the duration of the debt (repayable anywhere between 1 day to 30 years), and the default risk associated with the particular borrower. Equity, or stock, investments, obtain ownership shares of companies in anticipation of income from corporate dividends or appreciation in the value of the company. Equity investments are generally defined by three characteristics: (1) where the investment managers invest geographically (i.e., whether they invest in domestic or international companies, or both); (2) the size of the companies they invest in (generally categorized as small cap, mid cap, or large cap); and (3) their investment style, i.e. growth, value, or blend (growth funds invest in fast-growing companies, value funds look for more conservative or established stocks that are more likely to be undervalued, and blend funds invest in a mix of growth stocks, value stocks, and companies in between). Balanced funds are a type of mutual fund that invests in a mix of stocks and bonds. Target-date funds assemble a broad portfolio of investments from different asset classes at a risk level that declines over time as the targeted retirement date approaches.

32.     Investment funds can be either passively or actively managed. Passive funds, popularly known as "index funds," seek to replicate the performance of a market index, such as the S&P 500, by purchasing a portfolio of securities matching the composition of the index itself. By following this strategy, index funds produce returns that are very close to the market

segment tracked by the index. Index funds therefore offer predictability, diversified exposure to a particular asset or sub-asset class, and low expenses. Actively managed funds, on the other hand, pick individual stocks and bonds within a particular asset or sub-asset class and try to beat the market through superior investment selection. Actively managed funds are typically much more expensive than index funds, but offer the potential to outperform the market (although this potential typically is not realized).

33.     In addition to a menu of designated investment alternatives, many plans provide employees the option of opening a self-directed brokerage account ("SDBA"), giving them access to a broad array of stocks, bonds, and mutual funds. But SDBAs have significant drawbacks. Participants that choose to utilize an SDBA typically are assessed an account fee and a fee for each trade. These fees are not charged when investing in designated investment alternatives within the Plan. Costs are also higher because people who invest in mutual funds within an SDBA typically must invest in retail mutual funds instead of lower-cost institutional shares that are only available to retirement plans because of their ability to leverage the negotiating power of the plans' assets. Furthermore, SDBA investors often make imprudent investments because there is no fiduciary responsible for selecting or monitoring the investments within an SDBA. 29 C.F.R. §§ 2550.404a-5(f), (h)(5).

34.     The existence of an SDBA option does not excuse plan fiduciaries from constructing and maintaining a prudent and appropriate menu of designated investment alternatives. 29 C.F.R. § 2550.404c-1(d)(1)(iv) (a participant's "independent control" over assets "does not serve to relieve a fiduciary from its duty to prudently select and monitor any . . . designated investment alternative offered under the plan"). For the reasons described above, investors in SDBAs typically experience low real rates of return and higher retirement failures.

## B.     ESG Funds

35.     Environmental, social and governance (ESG) investing is an investment strategy aimed at influencing societal changes. Generally, three criteria are used to evaluate companies for ESG investing: (a) Environmental factors include a company's carbon footprint, toxic chemicals involved in its manufacturing processes and sustainability efforts that make up its supply chain; (b) Social factors include LGBTQ+ interests, racial and gender diversity, equity and inclusion programs, hiring practices, and how companies advocate for social good; (c) Governance factors include issues surrounding executive pay, diversity in leadership, and how well leadership responds to and interacts with shareholders.

36.     ESG funds are portfolios of securities and bonds from companies that have included environmental, social, and governance factors in their investment process. A company with a strong history and outlook in these

17

areas qualifies for inclusion in an ESG funds' investment portfolio. In contrast, an ESG fund will not consider a company with a poor track record in these areas for inclusion in its portfolio, even if the company is very profitable and it would otherwise be a good investment.

37.     Like other types of funds, ESG funds adopt one of two possible approaches to portfolio construction: They either passively track an index, or actively pick investments based on their own research. Actively managed ESG mutual funds conduct their own research to identify companies that meet their criteria. Passive ESG funds rely on third-party indexes to screen companies for their compliance with different ESG factors.

38.     ESG fund managers use portfolio screening as a process by which the fund manager reduces its universe of eligible investments based on non-pecuniary factors. Screening criteria based on non-pecuniary factors may also be used in the creation of an index that is used by ESG funds. Funds that use portfolio screening based on non-pecuniary factors, or that track an index that uses portfolio screening based on non-pecuniary factors, cannot be included in an ERISA plan's investment portfolio consistent with ERISA's mandate to maximize financial returns in for the sole benefit of the plan participants.

39.     ESG funds have an established record of underperformance. In a recent paper published in the Journal of Finance, University of Chicago researchers analyzed Morningstar ESG ratings of more than 20,000 mutual funds representing over $8 trillion of investor savings. Although the highest

ESG-rated funds attracted more capital than the lowest rated funds, none of the high ESG-rated funds outperformed any of the lowest rated funds.

40.     Over the past five years, global ESG funds have underperformed the broader market by more than 250 basis points per year, an average 6.3% return compared with a 8.9% return. This means an investor who puts $10,000 into an average global ESG fund in 2017 would have about $13,500 today, compared with $15,250 he would have earned if he had invested in the broader market.

**C.     ESG Proxy Voting and Shareholder Activism**

41.     Investment management companies have trillions of dollars of Americans' retirement savings under management. These companies, which own roughly 75 percent of the shares of America's publicly traded companies, must seek to earn the highest financial return possible for retirement plan participants and beneficiaries.

42.     Through proxy voting, many of these investment management companies prioritize their political biases and ESG priorities over financial performance. While a vote of shareholders may sound like a fair approach, most proxy votes are cast on behalf of shareholders by fund managers and are not based on a survey of their clients' wishes. The fund managers pursue an ESG agenda by voting the shares of their clients—including ERISA plan participants—on ESG proposals advanced primarily by leftist activist groups which do not seek to maximize profits or shareholder returns. In other words,

investment managers are buying their voting power with other people's money, yet investment managers are using that power in a way that is at odds with both the benefit of these shareholders and their preferences.

43.     ERISA plan participants then pay the price in the form of lower returns. ESG mandates drag down corporate performance, and higher fees and lost business opportunities burden shareholder returns. In stark contrast to the ESG agenda pursued by other investment managers, Vanguard's CEO recently told the *Financial Times*: "We don't believe that we should dictate company strategy. It would be hubris to presume we know the right strategy for the thousands of companies that Vanguard invests in." He added that "[o]ur research indicates that ESG investing does not have any advantage over broad based investing."

44.     Depressed returns for ESG investing are predictable, given that the measures being pressed by left-leaning groups interfere with merit and performance standards, while contributing to lost opportunities. A meta-review of more than 2,000 studies found that ESG-focused investing depressed returns. And a performance review published in 2020 found that pension funds with an ESG orientation lagged those of non-ESG funds by two basis points per year over a ten-year period.

**D.     ERISA Fiduciary Duties**

45.     ERISA provides that a "person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary

control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). Fiduciaries include trustees who retain management control over plan assets and investment managers who are commonly delegated such authority by the trustees. 29 U.S.C. § 1105(c)(3); 29 U.S.C. § 1102(c)(3).

46.    ERISA requires its fiduciaries to discharge their duties: (1) "for the exclusive purpose of providing benefits to [plan] participants;" (2) "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;" and (3) "by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." 29 U.S.C. §§ 1104(a)(1)(A)-(C).

47.    ERISA fiduciaries must go about their work under the guidance of very strict fiduciary duties of loyalty and prudence. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570-71 (1985). These duties are very similar to what is found under the common law of trusts. *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015) ("We have often noted that an ERISA fiduciary's duty is derived from the common law of trusts. In determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts"); *LaScala v. Scrufari*, 479 F.3d 213, 219 (2d Cir. 2007) ("The fiduciary obligations of the [plan's fiduciaries] to the participants and

beneficiaries of an ERISA plan are those of trustees of an express trust—the highest known to the law").

48.     With respect to defined contribution plans where plan sponsors present investment options from which beneficiaries choose, "fiduciaries must engage in a reasoned decision-making process for investigating the merits of each investment option and ensure that each one remains in the best interest of plan participants." *Schweitzer v. Inv. Comm. Of Phillips 66 Sav. Plan*, 960 F.3d 190, 197 (5th Cir. 2020) (citation omitted).

49.     As described below, ESG investing is incompatible with these duties.

### Duty of Loyalty – Solely in the Interest of Plan Participants and Beneficiaries

50.     Under ERISA's duty of loyalty, a plan fiduciary shall discharge his duties with respect to a plan "'*solely* in the interest of the participants and beneficiaries' and for the '*exclusive* purpose' of benefitting them." 29 U.S.C. § 1104(a)(1)(A)(i) (emphasis added). This "sole interest rule" is a codification of what is found in the common law of trusts. It creates a very specific and narrow path for an ERISA plan manager when considering an investment strategy or providing mutual fund selections for self-directed individual accounts.

51.     ERISA fiduciaries have a duty to the beneficiaries and participants not to be influenced by the interest of any third person or by motives other than the accomplishment of the purposes of the ERISA plan— they must act with an "eye single" to the interests of the plan participants.

*Pegram v. Hendrich*, 530 U.S. 211, 235 (2000); Restatement (Third) of Trusts § 78(1) cmt. F. (Am. Law Inst. 2007). "Perhaps the most fundamental duty of a [fiduciary] is that he must display . . . complete loyalty to the interest of the beneficiary and must exclude all selfish interest and all consideration of the interests of third persons." *Id.* at 224 (quotation marks and citations omitted). An ERISA plan manager who is influenced by his own or a third party's interests is disloyal because the ERISA plan manager is no longer acting *solely* in the interests of the beneficiaries. *See id.* ESG investing therefore breaches the sole interest rule if it is intentionally targeted to benefitting—to any degree—the interests of stakeholders or any other third party, including the interests of the plan manager.

52.     An investment advisor that has been delegated the role of ERISA plan manager may seek to satisfy its own financial interests when it takes on an investment strategy or offers a selection of funds to self-directed individual accounts that utilize an ESG strategy. For example, mutual funds that track ESG indexes will typically charge significantly higher fees than funds that track the more standardized and broadly based market indexes. Therefore, offering ESG funds may be significantly more profitable for the investment adviser than lower-cost funds that use standardized indexes.

53.     An ERISA plan manager is not acting *solely* in the interests of the plan participants and beneficiaries, and is breaching its duty of loyalty, if it

23

uses an ESG investment strategy or offers a selection of funds to self-directed individual accounts that utilize an ESG strategy.

### Duty of Loyalty – Pursuit of Financial Benefits

54.    Based on the U.S. Supreme Court's interpretation of the statutory language "providing benefits to participants and their beneficiaries," a fiduciary's duty of loyalty also requires an exclusive focus on the pursuit of *financial benefits*:

> "providing benefits to participants and their beneficiaries" while "defraying reasonable expenses of administering the plan." Read in the context of ERISA as a whole, the term "benefits" in the provision just quoted must be understood to refer to the sort of *financial* benefits (such as retirement income) that trustees who manage investments typically seek to secure for the trust's beneficiaries.

*Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 420-21 (2014) (quoting 29 U.S.C. §§ 1104(a)(1)(A)(i)-(ii)). "The term ['benefits'] does not cover nonpecuniary benefits." *Id*. at 421. Therefore, ERISA's duty of loyalty mandates the pursuit of *financial* benefits for the plan participants and beneficiaries and does not allow for the pursuit of nonfinancial or nonmonetary benefits, even if plan participants and beneficiaries approve.

55.    This means that that even if ERISA plan documents state that other objectives could or must be pursued, such as cleaning up the environment, raising labor wages, excluding investments that involve alcohol, guns, or tobacco, etc., making the workplace safer, providing better medical benefits for employees, or solving the world's social or political problems, no matter how worthy the objective, this conflicts with ERISA's fiduciary duties

and is void as a matter of public policy. *See Fifth Third Bancorp*, 573 U.S. at 421 ("With irrelevant exceptions, 'any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility . . . for any . . . duty under this part shall be void as against public policy'" (citing 29 U.S.C. § 1110(a)).

56.     To comply with its fiduciary duties, an ERISA plan manager must have the sole focus of pursuing the highest risk-adjusted financial return possible for plan participants and beneficiaries. If this does not occur because the plan manager uses an ESG strategy, the plan manager breaches its fiduciary duties.

### Duty of Prudence

57.     ERISA's duty of prudence imposes a "prudent person" standard by which to measure fiduciaries investment decisions and disposition of assets. A fiduciary must discharge its duty "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

58.     This standard applies when a plan manager selects its investments. *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983). A fiduciary also has a continuing duty to monitor investments and remove imprudent ones. *Tibble*, 575 U.S. at 528, 530. As a result, "the duty of prudence prevents a fiduciary from choosing or retaining an investment alternative that

is financially less beneficial than *reasonably available alternatives*." Financial Factors in Selecting Plan Investments, 85 Fed. Reg. 72,846, 72,848 (Nov. 13, 2020) (emphasis added).

59.   Critical to determining whether a plan manager has met its duty or prudence is a finding that the fiduciary has acted independently and impartially when making its investment decisions. As a result, "the duty of prudence prevents a fiduciary from choosing an investment alternative that is financially less beneficial than reasonably available alternatives." *Id*.

60.   The prudence standard typically focuses on the fiduciary's conduct in making investment decisions. *Main v. American Airlines, Inc.*, 248 F.Supp.3d 786, 793 (N.D. Tex. 2017); *Pension Benefits Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013). A fiduciary may breach the duty of prudence if a superior alternative investment was readily apparent such that an adequate investigation would have uncovered that alternative. *Id*.

61.   Even in a defined contribution plan where participants choose their investments, plan fiduciaries are required to conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options. *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2022) (citing *Tibble*, 575 U.S. at 529-30). If the fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty. *Id*.

**Co-fiduciary Liability**

62.     ERISA also imposes explicit co-fiduciary duties on plan fiduciaries who knowingly participate in a breach by another fiduciary, enable the breach by another fiduciary, or know of a breach and fail to make reasonable efforts to remedy the breach. 29 U.S.C. § 1105(a).

**E.     Defendants' ESG Investment Funds and ESG Investment Advisors**

63.     Defendants have selected and included a number of ESG funds as investment options under the Plan including, but not limited to, the following:

- *American Century Sustainable Equity Fund I*
- *AMG GW&K ESG Bond Fund*
- *Artisan Sustainable Emerging Markets Fund*
- *Boston Trust Walden Small Cap Fund*
- *Brown Advisory Sustainable Growth Fund*
- *CCM Community Impact Bond Fund*
- *Domini Impact International Equity Fund*
- *Firsthand Alternative Energy Fund*
- *Green Century Balanced Fund*
- *JPMorgan U.S. Sustainable Leaders Fund*
- *Parnassus Mid Cap Growth*
- *Parnassus Core Equity Investor Fund*
- *Parnassus Mid Cap Fund Institutional*
- *Parnassus Fixed Income Fund*
- *Parnassus Endeavor Fund*
- *Pax Large Cap Fund*
- *Pax Small Cap Fund*
- *Pax Sustainable Allocation Fund*
- *Pax Elevate Global Women's Leadership Fund*
- *Pax Global Environmental Markets*
- *PFG BR Equity ESG Strategy Fund Class R Shares*
- *PFG Invesco Thematic ESG Strategy*
- *Praxis Growth Index Fund*
- *Shelton Green Alpha Fund*
- *USAA Sustainable World Fund*

64.    These ESG funds pursue nonfinancial and nonpecuniary ESG policy agendas as part of their investment strategies, are more expensive than similar alternative investment funds, have underperformed compared to other similar investment funds, and engage in proxy voting and shareholder activism on ESG issues. Defendants did not independently investigate these ESG funds before including them as investment options under the Plan, did not independently monitor them once in the Plan, and did not remove ESG funds from the Plan.

65.    Defendants have also included in the Plan funds that are not branded as ESG funds, but are managed by investment companies who have voted for many of the most egregious examples of ESG policy mandates, on issues such as divesting in oil and gas stocks, banning plastics, requiring "net zero" emissions, and imposing "diversity" quotas in hiring. None of the proposals were supported by management at the targeted companies, and the investment managers' votes were typically made without the approval, or even the awareness, of Plan participants.

66.    Proxy voting records reveal that the following investment managers pursue nonfinancial and nonpecuniary ESG objectives as investment managers for non-ESG branded funds that have been included as investment options in the Plan:

- *Allspring Global*
- *Alps Advisors, Inc.*
- *American Century*
- *AQR Capital Management LLC*

- *Ariel Investments LLC*
- *BMO Global Asset Management*
- *BNY Mellon*
- *BNY Mellon (Multi-Managed)*
- *BNY Mellon (Sub-Advised)*
- *Boston Partners*
- *Boston Trust Walden Company*
- *Brandywine Global Investment Company*
- *Bridgeway Capital Management*
- *Brown Advisory LLC*
- *Calvert Research and Management, Inc.*
- *Causeway Capital Management LLC*
- *Chartwell Investment Partners*
- *Clearbridge Investments LLC*
- *Cohen & Steers Capital Management, LLC*
- *Community Capital Management, Inc.*
- *Cornerstone Capital Management LLC*
- *Counterpoint Mutual Funds, LLC*
- *Credit Suisse Asset Management LLC*
- *Domini Impact Investments LLC*
- *Driehaus Capital Management LLC*
- *DWS Investment Management Co., Inc.*
- *Eaton Vance Management, Inc.*
- *Epoch Investment Partners*
- *Federated Hermes Equity Ownership Services*
- *Firsthand Capital Management*
- *Franklin Advisors, Inc.*
- *Fuller & Thaler Asset Management*
- *Gamco Investors*
- *Gateway Investment Advisers LLC*
- *Glenmede Investment Management LP*
- *Gotham Asset Management, LLC*
- *Grandeur Peak Global Advisors, LLC*
- *Green Century Capital Management, Inc.*
- *Guggenheim*
- *Guinness Atkinson Asset Management, Inc.*
- *Heartland Advisors, Inc.*
- *Impax Asset Management, LLC*
- *Invesco (Multi-Managed_*
- *Invesco Advisers*
- *Invesco Asset Management Limited*
- *Invesco Capital*
- *Invesco Perpetual Select Trust*
- *Jackson Square Partners*

- *James Investment Research, Inc.*
- *John Hancock Funds, LLC (Multi-Managed)*
- *Lazard Asset Management LLC*
- *Mackay Shields LLC*
- *Meeder Asset Management, Inc.*
- *Metropolitan West Asset Management LLC*
- *MFS*
- *Miller/Howard Investments Inc.*
- *Morgan Stanley Investment Management, Inc.*
- *Nationwide Fund Advisers*
- *Nationwide Fund Advisers (Multi-Managed)*
- *Nicholas Co., Inc.*
- *Northern Trust*
- *Nuveen Asset Management LLC*
- *Oppenheimerfunds, Inc.*
- *Parametric Portfolio Associates, LLC*
- *Parnassus Investments*
- *Perkins Capital Management, Inc.*
- *Principal Global Investors LLC*
- *Principal Global Investors LLC (Multi-Managed)*
- *Profund Advisors*
- *River Road Asset Management*
- *Robert W. Baird & Co., Inc.*
- *Schroders PLC*
- *Segall Bryant & Hamill*
- *SEI Investments Management Corp. (Multi-Managed)*
- *Shelton Capital Management*
- *Silvant Capital Management LLC*
- *TCW Asset Management Co., Inc.*
- *The Timothy Plan*
- *Thompson Investment Management, Inc.*
- *Thrivent*
- *Transamerica Series Trust*
- *United Services Automobile Association (USAA)*
- *Vaughan Nelson Investment Management, LP*
- *Victory Capital Management, Inc.*
- *Virtus Investment Partners, Inc.*
- *Virtus Investment Partners, Inc. (Multi-Managed)*
- *Virtus Total Return Fund Inc.*
- *Voya Investment Mgmt*
- *WCM Investment Management*
- *William Blair & Co. LLC (Investment Management)*

67.     Upon information and belief, Defendants did not independently investigate the non-ESG branded funds that are managed by these investment companies before including them as investment options under the Plan, did not independently monitor them once in the Plan, and did not remove funds managed by these companies from the Plan.

## CLASS ACTION ALLEGATIONS

68.     Under 29 U.S.C. § 1132(a)(2), ERISA authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce fiduciary liability to the Plan and to recover for the Plan the remedies provided by 29 U.S.C. § 1109(a).

69.     In addition, as an alternative to direct individual action on behalf of the Plan under 29 U.S.C. § 1132(a)(2), this lawsuit is brought as a class action on behalf of the following classes:

> All participants and beneficiaries of the American Airlines, Inc. 401(k) Plan and/or the American Airlines, Inc. 401(k) Plan for Pilots from June 1, 2017 through the date of judgment (the "Class Period"), excluding Defendants and any of their directors, officers or employees with responsibility for the Plan's investment or administration (the "Class").

70.     This lawsuit is properly maintained as a class action under Rules 23(a), 23(b)(1) and 23(b)(3) of the Federal Rules of Civil Procedure.

## A.     Rule 23(a)

71.     Class certification is appropriate under Rule 23(a) because Plaintiffs' claims and allegations satisfy the requirements of numerosity, commonality, typicality, and adequacy.

**Numerosity**

72.     The exact number of members of the class is not presently known but there are approximately 100,000 participants and beneficiaries of the Plan. Due to the high number of class members, joinder of individual class members is impracticable.

**Commonality**

73.     Defendants have engaged in a common course of conduct giving rise to violations of ERISA sought to be enforced uniformly by Plaintiffs and the class members. Similar or identical violations of ERISA fiduciary duties of loyalty and prudence, and harm is involved. The harm sustained by class members flows in each instance from a common nucleus of operative fact:

(a) Defendants owed fiduciary duties to the Plan and to all Plan participants and beneficiaries; Defendants breached their fiduciary duties by selecting and including ESG funds as investment options for the Plan and Plan participants;

(b) Defendants breached their fiduciary duties by selecting and including ESG funds as investment options for the Plan and Plan participants despite the ESG funds having higher expenses compared with similar non-ESG funds;

(c) Defendants breached their fiduciary duties by selecting and including ESG funds as investment options for the Plan and Plan

participants despite the ESG funds having financial returns that underperformed compared with similar non-ESG funds;

(d) Defendants breached their fiduciary duties by selecting and including ESG funds as investment options for the Plan and Plan participants despite the ESG funds engaging in shareholder activism in pursuit of ESG goals.

74.    Each instance of harm suffered by Plaintiffs and the class members has directly resulted from a common course of conduct that violated ERISA. Thus, individual questions, if any, pale in comparison to the numerous common questions of fact and law presented in this lawsuit.

75.    Determination of the following common questions of fact will resolve in one stroke the following issues that are central to the validity of each one of the individual class member's claims:

(a) To whom are the fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

(b) Whether the fiduciaries of the Plan breached their fiduciary duties to the Plan;

(c) What amount of losses to the Plan resulted from each breach of fiduciary duty; and

(d) What Plan-wide equitable and other relief should be awarded because of Defendants' breaches of fiduciary duties.

33

**Typicality**

76.     The claims alleged by Plaintiffs and the resultant harms are typical of the claims of each member of the proposed class. Typicality exists because all absent class members have been harmed, or are at risk of harm, as a result of the same violations of ERISA alleged herein.

**Adequacy**

77.     Plaintiffs will fairly and adequately protect the interests of the class. There are no conflicts of interest between the Plaintiffs and the other class members. Plaintiffs have retained counsel with extensive experience litigating complex class action lawsuits in federal court. Plaintiffs' counsel has committed sufficient resources to represent the class. Plaintiffs' counsel therefore are well suited to fairly and adequately represent the interests of the class.

**B.     Rule 23(b)(1)**

78.     Class certification is appropriate under Rule 23(b)(1)(A) because prosecution of separate actions for breaches of fiduciary duties would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct regarding Defendants' fiduciary duties and liability to the Plan under 29 U.S.C. § 1109(a).

79.     Class certification is also appropriate under Rule 23(b)(1)(B) because adjudications by individual participants and beneficiaries regarding breaches of fiduciary duties and remedies for the Plan would, as a practical

matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests.

**C.     Rule 23(b)(3)**

80.     Class certification is also appropriate under Rule 23(b)(3) because a class action is the superior method for the fair and efficient adjudication of this lawsuit because joinder of all participants and beneficiaries is impracticable, the harm to individual participants and beneficiaries may be small and impracticable for individual class members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this lawsuit, and Plaintiffs are aware of no difficulties likely to be encountered in the management of this matter as a class action.

**D.     Rule 23(g)**

81.     Plaintiffs' counsel, Hacker Stephens LLP and Sharp Law LLP, have extensive experience litigating complex class action lawsuits in federal court. Plaintiffs' counsel have committed sufficient resources to represent the class and are well suited to fairly and adequately represent the interests of the class under Rule 23(g).

## CAUSES OF ACTION

### Count I: Breach of Duties of Loyalty and Prudence
### 29 U.S.C. §§ 1104(a)(1)(A)-(B)

82.   The preceding factual statements and allegations are incorporated herein by reference as if fully set forth herein.

83.   Defendants American Airlines, the Employee Benefits Committee, Fidelity, and Financial Engines are or were fiduciaries of the Plan during the relevant time period under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

84.   29 U.S.C. § 1104 imposes fiduciary duties of loyalty and prudence upon Defendants in their administration of the Plan and in their selection and monitoring of Plan investment options.

85.   The scope of the fiduciary duties and responsibilities of Defendants includes managing the assets of the Plan for the sole and exclusive financial benefit of Plan participants and beneficiaries, defraying reasonable expenses of administering the Plan, and acting with the care, skill, diligence, and prudence required by ERISA. Further, Defendants are or were directly responsible for ensuring that the Plan's fees are reasonable, selecting and retaining prudent investment options, evaluating and monitoring the Plan's investments on an ongoing basis and eliminating imprudent investment options, and taking all necessary steps to ensure that the Plan's assets are invested prudently.

86.   Defendants disloyally and imprudently selected, included, and retained ESG investment funds as investment options in the Plan for

participants and beneficiaries. Defendants selected, included, and retained ESG funds in the Plan despite their pursuit of nonfinancial and nonfinancial objectives. Defendants selected, included, and retained ESG funds in the Plan despite the availability of other nearly identical investment options from other mutual fund and investment companies that are widely utilized and would have cost the Plan participants less. Defendants also disloyally and imprudently selected, included and retained ESG funds in the Plan despite the known poor performance of ESG funds relative to their benchmark indices and to other similar investments that were available in the marketplace. Further, Defendants failed to investigate the proxy voting and shareholder activism of the ESG funds that they selected, included, and retained in the Plan even though doing so would have shown that the ESG funds did not pursue such strategies for the purpose of maximizing financial benefits. A loyal and prudent fiduciary would not have engaged in these acts and omissions.

87. Each of the disloyal and imprudent actions and failures to act in a loyal and prudent manner show Defendants' failure to monitor the Plan and select and include Plan investment options based solely on the financial merits of each investment and in the best interest Plan participants and beneficiaries. Instead, Defendants' conduct and decisions were influenced by a desire to drive substantial funds to ESG policy initiatives.

88. Through these actions and omissions, Defendants failed to discharge their duties with respect to the Plan solely in the interest of Plan

participants and beneficiaries, and for the exclusive purpose of providing benefits to Plan participants and beneficiaries and defraying reasonable expenses of administering the Plan, in violation of their fiduciary duties of loyalty under 29 U.S.C. § 1104(a)(1)(A).

89.    Through these actions and omissions, Defendants failed to discharge their duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, thereby breaching their fiduciary duties of prudence under 29 U.S.C. § 1104(a)(1)(B).

90.    Each Defendant is personally liable, and Defendants are jointly and severally liable, under 29 U.S.C. §§ 1109(a), 1132(a)(2), and (a)(3), and to make good to the Plan the losses resulting from their breaches.

91.    Each Defendant knowingly participated in each breach of the other Defendants knowing that such acts were a breach, enabled the other Defendants to commit breaches by failing to lawfully discharge such Defendant's own duties, and know of the breaches by the other Defendants and failed to make any reasonable and timely effort under the circumstances to remedy the breaches. Accordingly, each Defendant is also liable for the losses caused by the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a).

92.    Additionally, each Defendant who employed another Defendant or Defendants for the purpose of carrying out one or more of the fiduciary

duties described herein on behalf of the Plan is vicariously liable under the doctrine of respondeat superior. American Airlines, through its corporate officer, employed the Employee Benefits Committee, Fidelity, and Financial Engines, and directed them to take actions necessary to delegate, coordinate, effect, or maintain the investment of Plan assets. American Airlines provided each of these Defendants access to the Plan and the authority to act on behalf of the Plan in carrying out the responsibilities prescribed. Likewise, the Employee Benefits Committee employed its constituent members with such discretion, access, and authority as necessary to drive the investment of Plan assets. The improvident investment decisions and abdication of responsibility for corrective action or oversight by each Defendant employed by another occurred within the scope of that employment, and vicarious liability attaches accordingly.

### Count II: Breach of Duty to Monitor Fiduciaries
### 29 U.S.C. § 1105(a)

93.     The preceding factual statements and allegations are incorporated herein by reference as if fully set forth herein.

94.     American Airlines and the Employee Benefits Committee are or were fiduciaries of the Plan whose duties included a duty to monitor the performance of other Plan fiduciaries.

95.     American Airlines, through its corporate officers, was responsible for appointing and removing members of the Employee Benefits Committee. This carried with it the duty to monitor the performance of the fiduciaries

being appointed, and to ensure that they were performing their duties properly and in accordance with ERISA.

96.     The Employee Benefits Committee, through its members, was responsible for appointing and removing the Plan manager. This carried with it a duty to monitor the performance of the fiduciaries being appointed, and to ensure that they were performing their duties properly in accordance with ERISA.

97.     A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and monitoring of plan assets, and must take prompt and effective action to protect the plan and plan participants when the monitored fiduciaries fail to perform their fiduciary obligations in accordance with ERISA.

98.     To the extent that American Airlines, the Employee Benefits Committee, or its members delegated their fiduciary monitoring responsibilities, each Defendant's monitoring duty included an obligation to ensure that any delegated tasks were being performed loyally and prudently.

99.     American Airlines, the Employee Benefits Committee, and its members breached their fiduciary monitoring duties by, among other things, (a) failing to monitor and evaluate the processes by which the Plan's investment options were selected, which would have alerted a prudent fiduciary to the Plan's fiduciaries selecting and including ESG funds that

40

pursue nonfinancial and nonpecuniary ESG social policy changes instead of the maximum risk adjusted financial return for the Plan participants; (b) failing to monitor and evaluate the performance of the Plan's fiduciaries or have a system in place for doing so, standing idly by as the Plan participants and beneficiaries suffered losses as a result of higher fees and costs for ESG funds; and (c) failing to remove fiduciaries whose performance was inadequate in that they continued to maintain imprudent, costly, and poorly performing investments within the Plan, all to the detriment of the Plan and Plan participants and beneficiaries.

100.    As a result of the foregoing breaches of the duty to monitor, the Plan participants and beneficiaries suffered substantial financial losses due to excessive fees and investment underperformance.

101.    Pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3), American Airlines, the Employee Benefits Committee, and its members are liable to restore to the Plan all losses suffered because of the fiduciary breaches that resulted from their failure to properly monitor the Plan's fiduciaries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and as representative of the proposed Class defined herein, and on behalf of the American Airlines, Inc. 401(k) Plan and the American Airlines, Inc. 401(k) Plan for Pilots, prays that this Court enter judgment against the Defendants as follows:

(a) That this lawsuit may proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

(b) That the Court enter a declaratory judgment that Defendants have breached their fiduciary duties under ERISA;

(c) That Defendants make good to the Plan all losses that the Plan incurred as a result of their breaches of fiduciary duties, and to restore the Plan to the position it would have been in but for this unlawful conduct;

(d) That the Court grant permanent injunctive relief enjoining Defendants from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

(e) That pre- and post-judgment interest be awarded along with reasonable attorney fees, costs, and expenses incurred by Plaintiffs in bringing and prosecuting this case pursuant to 29 U.S.C. § 1132(g) and/or the common fund doctrine; and

(f) That this Court award such other and further relief as it deems equitable, just, and proper.

Respectfully submitted this 2nd day of June, 2023.

/s/ Andrew B. Stephens
ANDREW B. STEPHENS*
Texas Bar No. 24079396
andrew@hackerstephens.com
HEATHER G. HACKER
Texas Bar No. 24103325
heather@hackerstephens.com
HACKER STEPHENS LLP
108 Wild Basin Rd. South, Suite 250
Austin, Texas 78746
(512) 399-3022 (phone)

REX A. SHARP
Texas Bar No. 18118800
rsharp@midwest-law.com
SHARP LAW LLP
4280 West 75th St.
Prairie Village, Kansas 66208
(913) 901-0505

*Attorneys for Plaintiffs*

*Leave requested to proceed
  without local counsel