# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

BRYAN P. SPENCE, individually and as a
representative of a class of similarly
situated, and on behalf of the AMERICAN
AIRLINES, INC. 401(k) PLAN and the
AMERICAN AIRLINES, INC. 401(k)
PLAN FOR PILOTS,

§
§
§
§
§
§
§
§
§
§
§
§

Case No. 4:23-cv-00552-O

            Plaintiff,

v.

AMERICAN AIRLINES, INC., et al,

            Defendants.

## MOTION TO DISMISS BY DEFENDANTS AMERICAN AIRLINES, INC. AND THE AMERICAN AIRLINES EMPLOYEE BENEFITS COMMITTEE AND BRIEF IN SUPPORT

Dee J. Kelly, Jr. (S.B. # 11217250)
Russell D. Cawyer (S.B. # 00793482)
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Tel.:  (817) 332–2500
Fax:  (817) 878–9280
dee.kelly@kellyhart.com
russell.cawyer@kellyhart.com

Brian D. Boyle (*pro hac vice*)
(D.C. Bar # 419773)
Shannon M. Barrett (*pro hac vice*)
(D.C. Bar # 476866)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Tel.:  (202) 383–5300
Fax:  (202) 383–5414
bboyle@omm.com
sbarrett@omm.com

Mark W. Robertson (*pro hac vice*)
(N.Y. Bar # 4508248)
William D. Pollak (*pro hac vice*)
(N.Y. Bar # 4737037)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Tel.:  (212) 326–2000
Fax:  (212) 326–2061
mrobertson@omm.com

*Attorneys for Defendants American Airlines,
Inc. and the Employee Benefits Committee*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 3

      A.    The Plans and Plaintiff's Allegations ........................................... 3

      B.    Facts Bearing on Plaintiff's Lack Of Article III Standing ........................ 5

ARGUMENT ........................................................................................................ 9

    I.     COUNT I MUST BE DISMISSED ON MULTIPLE GROUNDS. ..................... 9

      A.    Plaintiff Lacks Article III Standing to Pursue Count I. ........................... 10

      B.    Count I Also Fails to State a Claim for Breach of ERISA Fiduciary Duties. ................................................................................................... 14

    II.    PLAINTIFF'S COUNT II IS DERIVATIVE OF COUNT I AND SO FAILS FOR THE SAME REASONS. ............................................................. 18

CONCLUSION ..................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. LaSalle Bank Nat'l Ass'n*,
446 F.3d 728 (7th Cir. 2006) ................................................................. 14

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ..................................................................... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................... 14

*Blackmon v. Zachary Holdings, Inc.*,
2021 WL 2190907 (W.D. Tex. Apr. 22, 2021) ...................................... 16

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ................................................................. 15

*Brotherston v. Putnam Invs., LLC*,
907 F.3d 17 (1st Cir. 2018) ................................................................... 17

*Camera v. Dell Inc.*,
2014 WL 960897 (W.D. Tex. Feb. 26, 2014) ........................................ 19

*Carney v. Adams*,
141 S. Ct. 493 (2020) ............................................................................. 10

*David v. Alphin*,
704 F.3d 327 (4th Cir. 2013) ................................................................. 12

*Davis v. Wash. Univ. in St. Louis*,
960 F.3d 478 (8th Cir. 2020) ................................................................. 16

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ............................................................................... 14

*Fulmer v. Klein*,
2011 WL 1108661 (N.D. Tex. Mar. 16, 2011) ...................................... 19

*Garthwait v. Eversource Energy Co.*,
2021 WL 4441939 (D. Conn. Sept. 27, 2021) ....................................... 11

*In re Calpine Corp. ERISA Litig.*,
2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) ....................................... 19

*In re Idearc ERISA Litig.*,
2016 WL 7189981 (N.D. Tex. Oct. 4, 2016) .......................................... 18

*In re LinkedIn ERISA Litig.*,
 2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) ....................................... 11

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*,
2014 WL 360291 (N.D. Tex. Feb. 3, 2014) ............................................ 12

*Johnson v. Delta Airlines, Inc.*,
2017 WL 10378320 (N.D. Ga. Dec. 12, 2017) ....................................... 11

**TABLE OF AUTHORITIES**

*(continued)*

**Page(s)**

*Kenny v. Pac. Inv. Mgmt. Co. LLC*,
    2015 WL 10635505 (W.D. Wash. Aug. 26, 2015) ................................................ 16

*Kirschbaum v. Reliant Energy, Inc.*,
    526 F.3d 243 (5th Cir. 2008) ............................................................................ 14, 15

*Kopp v. Klein*,
    722 F.3d 327 (5th Cir. 2013) .................................................................................. 4

*Lange v. Infinity Healthcare Physicians, S.C.*,
    2021 WL 3022117 (W.D. Wisc. July 16, 2021) ..................................................... 11

*Lee v. Verizon Comm'cns, Inc.*,
    837 F.3d 523 (5th Cir. 2016) ............................................................................ 11, 12

*Locascio v. Fluor Corp.*,
    2023 WL 320000 (N.D. Tex. Jan. 18, 2023) ................................... 10, 11, 15, 16

*Main v. Am. Airlines Inc.*,
    248 F. Supp. 3d 786 (N.D. Tex. 2017) ................................................................ 4, 15

*New Orleans City v. Ambac Assur. Corp.*,
    815 F.3d 196 (5th Cir. 2016) ............................................................................... 14

*Ortiz v. Am. Airlines, Inc.*,
    5 F.4th 622 (5th Cir. 2021) .................................................................................. 10

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
    *Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013 ............................................................................ 14, 15

*Perkins v. United Surgical Partners International Inc.*,
    2022 WL 824839 (N.D. Tex. 2022) ................................................................. 10, 16

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ................................................................................ 12

*Santiago v. Univ. of Miami*,
    2021 WL 1173164 (S.D. Fla. Mar. 1, 2021) .......................................................... 11

*Seidner v. Kimberly-Clark Corp.*,
    2023 WL 2728714 (N.D. Tex. Mar. 30, 2023) ....................................................... 16

*Singh v. RadioShack Corp.*,
    882 F.3d 137 (5th Cir. 2018) ............................................................................ 17, 18

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ........................................................................................ 10, 12

*Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*,
    778 F.3d 502 (5th Cir. 2015) ............................................................................ 12, 13

*Thole v. U.S. Bank N.A.*,
    140 S. Ct. 1615 (2020) ..................................................................................... 11, 12

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
   581 U.S. 433 (2017)................................................................................. 10

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021).............................................................................. 11

*Turner v. Davis Select Advisers LP*,
   2013 WL 11311737 (D. Ariz. Mar. 19, 2013)........................................... 17

*Warth v. Seldin*,
   422 U.S. 490 (1975).................................................................................. 12

*Wilcox v. Georgetown Univ.*,
   2019 WL 132281 (D.D.C. Jan. 8, 2019)................................................... 16

**Statutes**

29 C.F.R. § 2550.404a-5(d) .......................................................................... 8

29 C.F.R. § 2550.404a-5(h)(4)................................................................... 7, 8

29 C.F.R. § 2550.404c-1(d)(2)(iv) ............................................................... 7

29 C.F.R. §§ 2550.404a-5(f) .................................................................... 7, 13

29 C.F.R. §§ 2550.404a-5(h)(5)............................................................... 7, 13

29 U.S.C. § 1104(a)(1)(B) .......................................................................... 14

**Regulations**

57 Fed. Reg. 46,906 ...................................................................................... 8

57 Fed. Reg. 46,924 ...................................................................................... 8

85 Fed. Reg. 72,846 .................................................................................... 16

85 Fed. Reg. 72,848 .................................................................................... 16

## INTRODUCTION

Plaintiff alleges that the fiduciaries of the American Airlines, Inc. 401(k) Plan and the American Airlines, Inc. 401(k) Plan for Pilots (the "Plans") have breached fiduciary duties by purportedly including in the Plans' investment lineups so-called "Environmental, Social and Governance" ("ESG")-themed funds ("Challenged Funds") as well as other investment options whose managers allegedly use their proxy voting power in favor of ESG-themed shareholder proposals ("Challenged Managers").  In doing so, Plaintiff seeks to insert himself into the ongoing, politicized debate over the wisdom of ESG-themed investing.   But this is a case without a controversy.  Plaintiff does not allege that he has allocated **any** portion of his Plan account to the Challenged Funds he lists in the Complaint, or to any non-ESG investment options that happen to be sponsored by Challenged Managers with objectionable proxy-voting policies.  Nor could he, as he has never invested **either** in any of the 25 funds he identifies in the Complaint as ESG Funds **or** in any investment options sponsored by the Challenged Managers.

Indeed, it would have been impossible for Plaintiff to find any such investment options in the Plans' core investment lineup, where he has chosen to invest, because there are none.  Rather, the Challenged Funds and investment options by the Challenged Managers are available to participants exclusively through a self-directed brokerage account ("SDBA")—a Plan feature that enables those participants who do not wish to be restricted to the investment options selected by the Plans' fiduciaries to instead open their own brokerage accounts and choose freely from thousands of mutual funds, exchange-traded funds, and individual stocks at their own risk. Plaintiff has never opted for a brokerage account at all, much less navigated through the countless investment options accessible through it to find and invest in the ones he now challenges. Plaintiff's lack of standing warrants dismissal of the Complaint in its entirety.

Plaintiff's failure—indeed, his inability—to allege that there are ESG Funds or options

sponsored by the Challenged Managers in the Plans' core lineups (as opposed to the brokerage window) requires dismissal on the merits as well.  Plaintiff expressly concedes that Plan officials had fiduciary selection and monitoring responsibilities only for those core menu options (the so-called "Designated Investment Alternatives"), and that there were no such obligations with respect to any of the multitude of options that are available through a self-directed brokerage account.  Only by expressly alleging that the options he challenges were included in the core lineup would Plaintiff be able to state a claim under his theories—and Plaintiff does not do so.

Finally, Plaintiff's proxy-voting theory is subject to dismissal under Rule 12(b)(6) for an additional reason: Plaintiff does not allege any facts sufficient to infer that the unspecified options sponsored by Challenged Managers are financially inferior to those available from other managers.  For instance, he does not allege that the options sponsored by these managers have delivered lower returns than other options—or that the options' performance would have disqualified them on any other financial ground.  Indeed, he doesn't even bother to discuss the financial performance of a single investment option sponsored by a Challenged Manager.  He likewise alleges nothing that remotely permits an inference that Defendants selected underperforming investments in an effort to serve their own financial interests, or otherwise engaged in acts of disloyalty.  It should almost go without saying that if Plaintiff wants to mount a federal claim over the financial performance of the Plans' investment options, he has to plead facts about the performance of those options— it's as simple as that.

Indeed, Plaintiff has it backwards:  Through his proxy-voting claim, he suggests that Defendants would be duty-bound to avoid funds sponsored by the Challenged Managers even if their financial performance was stellar, simply because the managers might use portfolio shares to lend support to a shareholder ESG proposal.  But the broader premise of his Complaint—that

ERISA fiduciaries must curate a menu of Designated Investment Alternatives based exclusively on the goal of "maximizing financial benefits" for participants—suggests otherwise. If, based on traditional risk and return measures, a reasonable fiduciary would judge an investment option to offer the best prospects for "maximizing financial benefits" for participants, that fiduciary would be no more justified in rejecting the option based on the manager's ESG views than it would in excluding the option for any other non-pecuniary reason.

For these reasons, as set forth in greater detail below, the Court should dismiss Plaintiff's Complaint in its entirety.

## BACKGROUND

### A.    The Plans and Plaintiff's Allegations

Plaintiff Brian Spence is a pilot at American Airlines and a participant in the American Airlines, Inc. 401(k) Plan for Pilots (the "Pilots' Plan") which, along with the American Airlines, Inc. 401(k) Plan (the "AA 401(k) Plan"), is one of two defined contribution plans that are the focus of the Complaint. Compl. ¶¶ 2, 15–16. As defined contribution plans, each of the Plans allows eligible American Airlines employees to contribute a percentage of their earnings on a pre-tax basis and have their employee contributions combined with contributions from American Airlines itself. *Id*. ¶¶ 25, 27. Participants in the Plans are then able to invest among a range of investment options offered by the Plans. *Id*. ¶ 28. Those investment options include a core menu of Designated Investment Alternatives that are selected and monitored by the American Airlines Employee Benefits Committee (the "Committee"). Compl. ¶¶ 18, 28–29, 33. Like many other defined contribution plans in the country, the Plans also allow participants the freedom to reject the choices arranged by the Committee, and to invest their Plan balances at their own risk through an individual, self-directed brokerage account in "a broad array of stocks, bonds, and mutual funds." *Id*. ¶ 33; *see* AA-APP317–18, 355–57, 394–96, 435–437 (2017 and 2021 Form 5500s for

-3-

the AA 401(k) Plan and the Pilot's Plan).[1]   Through the self-directed brokerage window, participants have the freedom to invest in a broad range of investment options rather than being limited to the Designated Investment Alternatives.  Compl. ¶ 33.

Plaintiff asserts two counts regarding the Plans' investments.  In Count I, Plaintiff alleges that Defendants breached fiduciary duties of prudence and loyalty by offering unreasonable investment options.  *See* Compl. ¶¶ 82–92.  In Count II, Plaintiff alleges that Defendants failed to adequately monitor the Plans' other alleged fiduciaries.  *See id*. ¶¶ 93–101.  Plaintiff targets two categories of alleged Plan investment options.   First, Plaintiff alleges that the Plans offer as investment options at least 25 "ESG funds"—again, the "Challenged Funds"—that "pursue nonfinancial and nonpecuniary ESG policy agendas as part of their investment strategies[.]"  *Id*. ¶¶ 63–64.  Second, the Complaint alleges that the Plans also offer non-ESG-themed investment options sponsored by a list of Challenged Managers who have purportedly used their proxy voting power to vote for "ESG policy mandates."  *Id.* ¶¶ 65–66.  Plaintiff does not identify any investment options that fall within this category, but instead lists 90 Challenged Managers by name that allegedly engage in ESG-themed proxy voting, and cites resolutions aimed at causing portfolio companies to "divest[] in oil and gas stocks" and "ban[] plastics" as examples of shareholder initiatives he opposes.  *Id.*  Plaintiff does not specifically allege that the options he challenges are

---

[1]     When deciding a motion to dismiss under Rule 12(b)(6), the Court may consider "legally required public disclosure documents filed with the Securities and Exchange Commission, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Kopp v. Klein*, 722 F.3d 327, 333 (5th Cir. 2013) (taking judicial notice of publicly filed SEC documents in ERISA litigation involving alleged a breach of fiduciary duty), *vacated and remanded on other grounds*, 134 S. Ct. 2900 (2014).  Thus, courts routinely consider plan Form 5500s in deciding motions to dismiss because they are publicly filed with the Department of Labor.  *See, e.g.*, *Main v. Am. Airlines Inc.*, 248 F. Supp. 3d 786, 791 (N.D. Tex. 2017) (O'Connor, J.) (taking judicial notice of the American Airlines, Inc. 401(k) Plan Form 5500, Exhibit D to the motion to dismiss).

-4-

found in the Plans' core investment lineups, or exclusively in the Plans' brokerage window.  *See* Compl. ¶¶ 63, 66.  Plaintiff likewise does not allege that he has invested his own Plan account in any Challenged Funds, or in any investment options sponsored by the Challenged Managers who have engaged in improper proxy voting.  *See generally* Compl.  Nor, as detailed below, could he plausibly do so.

### B.    Facts Bearing on Plaintiff's Lack Of Article III Standing

As noted, during the proposed class period, the Plans offered a set of Designated Investment Alternatives chosen by the Plans' fiduciaries.  In the Pilot's 401(k) Plan, these alternatives include a choice of between nine and ten index funds, each of which invests exclusively in a collective investment trust managed by BlackRock Institutional Trust Co. ("BlackRock") or State Street Global Advisors; an inflation protection fund that has invested exclusively in a BlackRock TIPS Index Fund managed by BlackRock; an option that makes deposits in the American Airlines Federal Credit Union; and a stable value option that invests exclusively in a stable return fund managed by Galliard Capital Management.  AA-APP002–003 at ¶¶ 7–8 (Menezes Decl.); *see also* AA-APP027–30, 41–45, 57–60, 71–75, 87–90, 103–07, 119–22, 135–39 (participant fee disclosures listing the Designated Investment Alternatives in the Plans).[2]  They also include between five and six actively-managed custom funds that the Committee has arranged exclusively for participants in the Plans.  AA-APP002–003 at ¶ 8 (Menezes Decl.); *see also* AA-APP027–30, 41–45, 57–60, 71–75, 87–90, 103–07, 119–22, 135–39 (participant fee disclosures listing the Designated Investment Alternatives in the Plans).  These

---

[2]    The Designated Investment Alternatives in the AA 401(k) Plan are similar except that there are approximately five index funds (instead of nine), which invest exclusively in a collective investment trust managed by BlackRock Institutional Trust Company.  AA-APP002 at ¶¶ 7 (Menezes Decl.)

custom funds are not sponsored by any single investment manager.  AA-APP002–003 at ¶ 8 (Menezes Decl.).  Rather, the Committee itself determines how to allocate each of the custom fund's assets among multiple underlying third-party-managed collective investment trusts or separate accounts selected by the Committee.  *Id.*  Finally, the Designated Investment Alternatives include a suite of custom American Airlines target date funds ("TDFs"), which automatically adjust their risk profile and asset allocation as investors move closer to their chosen retirement date.  AA-APP003 at ¶ 9; AA-APP027–28, 41–42, 57–58, 71–73, 87–88, 103–05, 119–20, 135–36.  As with the custom funds, the TDFs are not sponsored by an outside manager; instead, the TDFs invest in certain of the Plans' other Designated Investment Alternatives and in one additional index fund managed by BlackRock pursuant to allocations determined by the Committee.  AA-APP003 at ¶ 9 (Menezes Decl.).

None of the investment options identified in the Complaint as Challenged Funds (*see* Compl. ¶ 63) is or has been a Designated Investment Alternative in the Plans during the proposed class period.  AA-APP005 at ¶ 12 (Menezes Decl.).  Rather, participants have only been able to invest in these options by going off the Plans' menu of Designated Investment Alternatives and opening a self-directed brokerage account at Fidelity Investments.  *Id.*  This "brokerage window" feature affords those participants who do not wish to be restricted to the curated set of Designated Investment Alternatives chosen by the Plans' fiduciaries with the freedom to access the broader securities markets through a traditional brokerage account.  AA-APP003–004 at ¶¶ 10–11.  To this end, the Plans' annual disclosures informs participants that the "fiduciary neither evaluates nor monitors the investments available through" the brokerage window.  *See, e.g.,* AA-APP116;  AA-APP132 (2023 404(a)(5) Annual Participant Disclosures); *see also* AA-APP024, 38, 54, 68, 84, 100, 116, 132 (annual participant fee disclosures).

The range of investment options available to participants electing to open a Fidelity self-directed brokerage account is exceptionally broad and includes thousands of investment options designed to reflect the broader securities market.  AA-APP003–004 at ¶ 10 (Menezes Decl.).  Indeed, as of the end of the first quarter of 2023, participants in the Pilots 401(k) Plan were invested in over 2,000 different mutual funds or exchange-traded funds representing more than 200 different investment management firms, including more than 145 distinct funds offered by Vanguard—the firm that Plaintiff lauds for not pursuing ESG goals, through the Plan's brokerage window.  *Id.*; *see also* Compl. ¶ 43.  The brokerage window also offers participants the freedom to select other types of investments, such as REITs and commodities, as well as to invest directly in the securities of thousands of individual companies; brokerage window participants have used their accounts to invest directly in such sectors as oil and gas companies (*e.g.*, Exxon Mobil, Chevron, and ConocoPhillips) and plastics manufacturers (*e.g.*, Dow, Inc. and DuPont).  AA-APP004 at ¶ 11 (Menezes Decl.).  Participants can also invest in funds that describe themselves as "anti-ESG funds," including, for example, the Strive US Energy fund (with ticker "DRLL"), which invests exclusively in securities of oil, gas, and energy companies, and the AdvisorShares TR Vice ETF, which invests exclusively in "vice" industries like alcohol, tobacco, and gambling companies.  AA-APP003–004 at ¶ 10 (Menezes Decl.); AA-APP009 (Prospectus for Strive US Energy fund); AA-APP016 (Prospectus for AdvisorShares TR Vice ETF).

As Plaintiff himself expressly concedes, "there is no fiduciary responsible for selecting or monitoring the investments within an SDBA."  Compl. ¶ 33 (citing 29 C.F.R. §§ 2550.404a-5(f), (h)(5)).  That is, unlike a plan fiduciary's function in constructing a menu of Designated Investment Alternatives, merely providing access to a brokerage window does not entail the "fiduciary function" of "limiting or designating investment options[.]"  *Final Regulation Regarding*

*Participant Directed Individual Account Plans*, 57 Fed. Reg. 46,906, 46,924 n.27 (Oct. 13, 1992); *see also* 29 C.F.R. § 2550.404c-1(d)(2)(iv); 29 C.F.R. § 2550.404a-5(h)(4) ("The term 'designated investment alternative' shall not include 'brokerage windows,' 'self-directed brokerage accounts,' or similar plan arrangements that enable participants and beneficiaries to select investments beyond those designated by the plan."). Indeed, compliance with a requirement that plan fiduciaries individually curate and monitor each of the myriad of investment options available through a self-directed brokerage window—including thousands of individual securities—would be utterly infeasible. Thus, if such a requirement did exist, it would undoubtedly result in fiduciaries eliminating access to brokerage windows—and the economic freedom they offer participants.[3]

Plaintiff has limited the investments in his Plan account to Designated Investment Alternatives. At no time since the beginning of the proposed class period on June 1, 2017 has Plaintiff invested any portion of his account through the brokerage window, and thus at no time during the proposed class period has he invested his account in any of the Challenged Funds

---

[3]     The distinction between selecting Designated Investment Alternatives and providing access to investment options through a brokerage window is also reflected in the difference in applicable participant disclosure requirements. For instance, the Department of Labor regulations require plan administrators to furnish plan participants with detailed information regarding each "designated investment alternative" offered under the plan, 29 C.F.R. § 2550.404a-5(d), but exclude from these requirements "'brokerage windows,' 'self-directed brokerage accounts,' or similar plan arrangements that enable participants and beneficiaries to select investments beyond those designated by the plan," *id*. § 2550.404a-5(h)(4). Instead, plan administrators need only provide a "description of any 'brokerage windows,'" not the funds within the window, *id*. § 2550.404a-5(c)(1)(i)(F), and "an explanation of any fees and expenses that may be charged against the individual account of a participant or beneficiary on any individual, rather than on a plan-wide basis," *id*. § 2550.404a-5(c)(3)(i)(A). *See also* Compl. ¶ 33; U.S. Dep't of Labor, Field Assistance Bulletin No. 2012-02R at Q29 (July 30, 2012) ("[T]he [participant] disclosure requirements in paragraph (d) of the regulation (investment-related information) do not apply to brokerage windows, self-directed brokerage accounts, and similar arrangements, because such windows, accounts, and arrangements are not designated investment alternatives."). Plaintiff does not allege that the Plans failed to meet these disclosure requirements.

identified in the Complaint.  AA-APP005–006 at ¶ 16 (Menezes Decl.).  Nor has Plaintiff invested

in a non-ESG investment option that is sponsored by one of the Challenged Managers to which

Plaintiff attributes an ESG-oriented proxy-voting practice; in fact, as explained, none of the Plans'

Designated Investment Alternatives is sponsored by any such manager.  AA-APP005–006 at ¶ 16;

*see also* AA-APP002–003 at ¶¶ 7–9.  Rather, from June 1, 2017 through March 14, 2023, Plaintiff

invested his entire account in the American Pilot Target Date Fund 2045, one of the custom TDFs

constructed by the Committee.  AA-APP005–006 at ¶¶ 14–16 (Menezes Decl.); AA-APP146–266

(Plaintiff's account statements).  Since March 15, 2023, Plaintiff has also allocated portions of his

account to five of the index fund Designated Investment Alternatives that invest solely in collective

investment trusts managed by BlackRock.  AA-APP005–006 at ¶¶ 14–16 (Menezes Decl.);  AA-

APP268–278.

## ARGUMENT

### I.   COUNT I MUST BE DISMISSED ON MULTIPLE GROUNDS.

Plaintiff does not allege that he has invested either in a Challenged Fund with ESG aims,

or in a non-ESG fund that is sponsored by one of the Challenged Managers identified in the

Complaint, and he cannot plausibly make that allegation.  Plaintiff is thus without Article III

standing to pursue either of the theories of fiduciary liability he has pleaded to support Count I.  In

addition, Plaintiff does not allege that Defendants have allowed participants to access any of the

investment options he challenges *in the core investment lineup*—as opposed to exclusively

through the Plans' brokerage window—and he concedes that ERISA does not impose fiduciary

selection and monitoring responsibilities with respect to individual brokerage window options.  He

therefore hasn't plausibly alleged that Defendants have fallen short of their fiduciary obligations

under either of his theories.  And Plaintiff's sweeping alternative theory that ERISA does not allow

defined contribution plans to offer any options (ESG-themed or otherwise) sponsored by his list

of Challenged Managers because they allegedly follow ESG-oriented proxy voting practices fails

to state a claim because he does not plausibly allege that a fiduciary focused solely on the financial

interests of participants in the Plans would have systematically avoided all such options.

### A. Plaintiff Lacks Article III Standing to Pursue Count I.

Plaintiff's two theories in support of Count I—that Defendants improperly caused the Plans

to include Challenged Funds as investment options, and that they breached duties by including

non-ESG investment options sponsored by Challenged Managers—fail at the outset because he

does not allege that he has invested his account balance in any such investment option. *See*

*generally* Compl. ¶ 15. It is self-evident that "the performance and fees of the investments ***not***

***selected*** by a participant" in a defined-contribution plan have "no effect on the value of the

participant's" account. *Locascio v. Fluor Corp.*, 2023 WL 320000, at *3 (N.D. Tex. Jan. 18, 2023)

(emphasis in original). As Plaintiff has not suffered a concrete and particularized injury from the

conduct that he challenges, he therefore lacks standing to bring these claims under well-established

case law. *See, e.g.*, *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (to establish standing, a plaintiff

must demonstrate an injury in fact that is "concrete and particularized, as well as actual or

imminent") (citation omitted); *Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 628–29 (5th Cir. 2021)

(similar); *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 438 (2017) (similar); *Spokeo,*

*Inc. v. Robins*, 578 U.S. 330, 339 (2016) (a plaintiff must identify an injury that affects him "in a

personal and individual way").

Two recent cases in this Court confirm the legal principles that doom any claim of standing

by Plaintiff. In *Perkins v. United Surgical Partners International Inc.*, 2022 WL 824839, at *4

(N.D. Tex. 2022), the Court dismissed the plaintiffs' claims because they "fail[ed] to allege injury

to their own investment accounts or their investment in any of the challenged funds." *Id.* at *4.

While the plaintiffs' breach-of-fiduciary-duty claims "alleged an injury to the Plan and participants

-10-

generally," the plaintiffs nonetheless lacked standing because they had not invested in any of the challenged funds and therefore could not allege an injury to "themselves." *Id*. Likewise in *Locascio*, the Court held that one of the named plaintiffs "suffered no injury, and therefore ha[d] no standing, because she invested in none of the twelve options of the Plan." 2023 WL 320000, at *3. The plaintiff, as the district court aptly concluded, had pleaded "her way out of court." *Id*.[4]

In his Complaint, Plaintiff appears to suggest that it is enough for standing purposes that "he maintained investments in the Plan during the Class Period," as "ERISA authorizes ***any participant*** to bring suit as a representative of a plan." Compl. ¶ 16 (emphasis added). But in its recent decision in *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020), the Supreme Court specifically rejected "the argument that a plaintiff automatically satisfies the injury-in-fact requirement [of Article III standing] whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 1620 (citation omitted); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (same); *Lee v. Verizon Comm'cns, Inc.*, 837 F.3d 523, 546 (5th Cir. 2016) ("Article III standing is distinct from statutory standing, and we decline to undermine this distinction by recognizing the latter as conferring the former.") Rather, a plaintiff suing under ERISA "as representative[] of the plan itself" must still establish that he "suffered an injury in fact, thus giving [him] a sufficiently concrete interest in the outcome of the issue in

---

[4]    Courts in other circuits are in accord. *See, e.g.*, *In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *4 (N.D. Cal. Nov. 16, 2021) (dismissing complaint for lack of standing where "none of the Plaintiffs have alleged that they personally invested in the" challenged funds, and noting that "district courts across the country have" held that ERISA plaintiffs lack standing unless they "can plead injury to their own plan account"); *Garthwait v. Eversource Energy Co.*, 2021 WL 4441939, at *6 (D. Conn. Sept. 27, 2021) (similar); *Lange v. Infinity Healthcare Physicians, S.C.*, 2021 WL 3022117, at *2–4 (W.D. Wisc. July 16, 2021) (similar); *Santiago v. Univ. of Miami*, 2021 WL 1173164, at *6–8 (S.D. Fla. Mar. 1, 2021) (similar), *R&R adopted by* 2021 WL 1165441 (S.D. Fla. Mar. 26, 2021); *Johnson v. Delta Airlines, Inc.*, 2017 WL 10378320, at *2 (N.D. Ga. Dec. 12, 2017) (similar).

dispute." *Thole*, 140 S. Ct. at 1620 (quotations omitted); *see also Lee*, 837 F.3d at 544–48 (similar); *David v. Alphin*, 704 F.3d 327, 333–39 (4th Cir. 2013) (similar).  Plaintiff fails to satisfy this threshold requirement because he does not allege that he has invested either in a Challenged Fund or in another type of fund sponsored by a Challenged Manager.  Thus, his allegations do not establish that he suffered any injury in fact as a result of Defendants' alleged ERISA violations.[5] There is, in short, "no ERISA exception to Article III," *Thole*, 140 S. Ct. at 1622, and it follows Count I must be dismissed on the pleadings alone.

But Plaintiff's lack of standing is not merely a pleading defect.  When attacking a plaintiff's constitutional standing, a "party may . . . direct the court to matters outside of the pleadings." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 2014 WL 360291, at *4 (N.D. Tex. Feb. 3, 2014) (O'Connor, J.); *see also Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (*per curiam*) (proper to consider documents outside the pleadings under Rule 12(b)(1)).  "To defeat [such] a factual attack," in turn, "a plaintiff must prove the existence of subject-matter jurisdiction by a preponderance of the evidence and is obliged to submit facts through some evidentiary method to sustain his burden of proof."  *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (citations omitted).

Plaintiff cannot carry this burden because he has never invested in any of the Challenged Funds identified in the Complaint, or in any investment option sponsored by a Challenged Manager.    AA-APP003–005 at ¶¶ 8–9, 12 (Menezes Decl.); AA-APP145–279 (account statements).   Indeed, no such investment options have been included in the Plans' menu of

---

[5]     It is irrelevant for standing purposes that Plaintiff seeks to represent a class because even putative class representatives "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo*, 578 U.S. at 338 n.6 (citation omitted); *see also Warth v. Seldin*, 422 U.S. 490, 502 (1975) (underscoring that plaintiff must allege a distinct and palpable injury to himself).

Designated Investment Alternatives during the entire six-year ERISA repose period.   AA-AAP005–006 at ¶¶ 7–9, 12 (Menezes Decl.); AA-APP027–30, 41–45, 57–60, 71–75, 87–90, 103–07, 119–22, 135–39 (participant fee disclosures listing the Designated Investment Alternatives in the Plans).   Rather, if a participant wants to allocate retirement monies to a Challenged Fund, or to an option sponsored by a Challenged Manager, he or she must shop outside the Plans' Designated Investment Alternatives by opening a self-directed brokerage account.   *Id.*; *see also* AA-AAP005 at ¶ 12.   Only by rejecting the Plans' menu and opening a brokerage account could Plaintiff have found his way to these kinds of investment options.   *Id.*   And Plaintiff expressly concedes that the fiduciary duties of investment selection and monitoring he invokes apply only to Designated Investment Alternatives, and have no relevance to the individual choices available through a self-directed brokerage account. Compl. ¶ 33 ("there is no fiduciary responsible for selecting or monitoring the investments within an SDBA") (citing 29 C.F.R. §§ 2550.404a-5(f), (h)(5)).

Even if ERISA imposed duties on Plan fiduciaries to vet the myriad securities available through a brokerage account, Plaintiff's status as a mere bystander would not change:   As Plaintiff's account statements demonstrate, he has never opened a self-directed brokerage account as required to access the vast array of funds and securities that have not been curated by the Plans' fiduciaries.   AA-APP005 at ¶ 16 (Menezes Decl.); AA-APP145–279 (Plaintiff's account statements).   Thus, he wouldn't be able to claim an Article III injury even if—contrary to his concession—a fiduciary duty to curate the individual securities available through that brokerage account applied.   *See Superior MRI Servs.*, 778 F.3d at 504.

Because Plaintiff has never invested in any of the investment options he purports to challenge, he cannot have suffered an injury from the challenged conduct, and his claims must be

dismissed.  *Supra* at 10 & n.4 (collecting cases).

      **B.**    **Count I Also Fails to State a Claim for Breach of ERISA Fiduciary Duties.**

      In addition to failing the test for Article III standing, Plaintiff does not plausibly allege facts sufficient to establish that Defendants fell short of their fiduciary responsibilities.  While he alleges that the Plans allow investments in the options he objects to, he does not expressly allege that those options are available in the core investment menu (among the Designated Investment Alternatives) as opposed to exclusively through the brokerage window—where he concedes that fiduciary selection and monitoring responsibilities do not apply.  *See* Compl. ¶¶ 63, 66.  Indeed, as Defendants have established pursuant to Rule 12(b)(1), he cannot make this allegation.  *Supra* at 12–13.  Plaintiff's factual allegations therefore fall short of painting a breach of ERISA fiduciary duties under either of his two theories about impermissible investment options.

      Separately, even overlooking this general problem with Plaintiff's skeletal pleading, Plaintiff's second theory of breach—that Defendants were duty bound to avoid any and all funds (ESG-themed or not) sponsored by a long list of Challenged Managers (Compl. ¶ 66)—does not "plead 'enough facts to state a claim to relief that is plausible on its face.'"  *New Orleans City v. Ambac Assur. Corp.*, 815 F.3d 196, 200 (5th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[6]  That is, even if one accepts for purposes of Rule 12(b)(6) the erroneous

---

[6]      The Supreme Court has emphasized that a Rule 12(b)(6) motion is an "important mechanism for weeding out meritless claims" in the ERISA context.  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).  ERISA cases "require[] careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently," *Id.*—i.e., that the fiduciary did not act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 253 (5th Cir. 2008) (quoting 29 U.S.C. § 1104(a)(1)(B)); *see also Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 733 (7th Cir. 2006).  Therefore, where, as here, a complaint lacks any "allegations relating directly to the methods employed by the ERISA fiduciary," it cannot survive a motion to dismiss unless the court "may reasonably 'infer from what is alleged that the process was flawed.'"  *Pension Ben. Guar. Corp.*

premise that the Challenged Managers' funds have served as Designated Investment Alternatives (i.e., the portion of the Plans' investment menu to which fiduciary selection and monitoring duties apply), Plaintiff's limited factual allegations do not describe either a failure to act prudently or a breach of the duty of loyalty.

*Prudence.*  As Plaintiff acknowledges, ERISA's prudence inquiry focuses on a fiduciary's process.  Compl. ¶¶ 48, 60; *see, e.g.*, *Kirschbaum*, 526 F.3d at 253; *Main*, 248 F. Supp. 3d at 793. But Plaintiff includes no allegations showing that Defendants' decision-making process was flawed.  *See Locascio*, 2023 WL 320000, at *6.  Instead, he asks the Court to infer a deficient process from the mere fact that participants were offered the ability to choose products sponsored by the Challenged Managers as investment options.   Compl. ¶ 66.  And despite alleging that a fiduciary must select investment options based solely on their prospects for financial performance, Compl. ¶¶ 58–59, Plaintiff does not even mention the financial performance of any Designated Investment Alternative in the Plans' menus—relative to the option's investment benchmarks, relative to peer funds with the same or similar investment strategy, or otherwise.  Indeed, Plaintiff says absolutely nothing about the performance of ***any*** of the products offered by the Challenged Managers, whether supposedly among the Plans' Designated Investment Alternatives or not— much less try to connect the dots between specific proxy votes on shareholder resolutions he disfavors and the financial performance of the companies in the managers' portfolios, or, in turn, the performance of the portfolios themselves relative to alternative products the Committee might have chosen.  *See* Compl. ¶¶ 5, 65–67; *see also id.* ¶ 59.[7]

---

*ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009)).

[7]     While the Department of Labor has swung back and forth on how ESG considerations should factor in the management of ERISA-governed retirement investments during the past two

Needless to say, "a complaint cannot simply make a bare allegation that costs are too high, or returns are too low.  Rather, it must provide a sound basis for comparison—a meaningful benchmark." *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020) (citation omitted); *see also Perkins*, 2023 WL 2899539, at *6 ("[A]t the motion to dismiss stage the plaintiffs still need to plead facts about their own case that, coupled with meaningful benchmarks, allow for a context-specific inference of imprudence."); *Locascio*, 2023 WL 320000, at *6 (dismissing complaint).  Some courts in this circuit have held that the question of whether an alleged benchmark offers an "appropriate" basis for comparison to the challenged investment option is a question "of fact that cannot be decided on a motion to dismiss." *Seidner v. Kimberly-Clark Corp.*, 2023 WL 2728714, at *7 (N.D. Tex. Mar. 30, 2023); *see also Blackmon v. Zachary Holdings, Inc.*, 2021 WL 2190907, at *5 (W.D. Tex. Apr. 22, 2021).  But in those cases, the plaintiffs alleged ***some*** benchmark for judging the quality of the manager's performance.  Here, Plaintiff offers no such allegation—again, he does not even advert to how any of these managers' products have performed.[8]  Compl. ¶¶ 5, 65–67.  The upshot is that there is no basis to infer from

Presidential administrations, pronouncements from Department of Labor officials in each of those administrations are in accord that there plainly are circumstances in which an investment manager might favor an "ESG policy" for pecuniary reasons.  *See Financial Factors in Selecting Plan Investments*, 85 Fed. Reg. 72,846, 72,848 (Nov. 13, 2020); *Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights*, 87 Fed. Reg. 73,822, 73825–26 (Dec. 1, 2022).  For example, a manager might favor adoption of a resolution with respect to the cleanup of toxic chemical discharges based on the premise that it might financially benefit the company by avoiding fines or costly litigation.  *See* 85 Fed. Reg. at 72,848.

[8]     As it happens, judicially noticeable information available from Morningstar, an investment advisory service that reports performance information on mutual funds, shows that investment options offered by the Challenged Managers have some of the most attractive performance records in their asset classes—delivering returns over the last five years that have not only far exceeded their investment benchmarks, but also placed them at top of their peer groups.  *See, e.g.*, *Wilcox v. Georgetown Univ.*, 2019 WL 132281, at *4 n.5 (D.D.C. Jan. 8, 2019) (taking judicial notice of information on "the various funds available through Morningstar, a well-respected investment research firm"); *Kenny v. Pac. Inv. Mgmt. Co. LLC*, 2015 WL 10635505, at *3 (W.D. Wash. Aug.

Plaintiff's allegations that a reasonably prudent fiduciary would have systematically avoided all of the products offered by the Challenged Managers because of their financial performance.

***Loyalty.***   Plaintiff's loyalty allegations are equally threadbare.   Compl. ¶¶  8–9; *see also Id.* ¶¶ 65–67. The Complaint sets forth no plausible basis for concluding that offering options sponsored by the Challenged Managers was motivated by anything other than the financial interests of the Plans' participants.   *See Brotherston v. Putnam Invs.*, *LLC*, 907 F.3d 17, 40 (1st Cir. 2018) (disloyalty is established only where the  "operative motive" behind the fiduciary's action "was to further its own interests"); *Singh v. RadioShack Corp.*, 882 F.3d 137, 150 (5th Cir. 2018) (affirming dismissal of disloyalty claim where "Defendants' actions were equally consistent with protecting" participants' interests).   To be sure, Plaintiff mouths the bare legal conclusion that Defendants acted "to further their own preferences and interests" in electing to include products sponsored by the Challenged Managers as investment options.   Compl. ¶ 8.  But Plaintiff makes no factual allegations to back up the legal conclusion—he says absolutely nothing regarding the Committee's motivations in selecting investment options, and nothing regarding how those selections supposedly benefited Defendants personally—financially or otherwise.  *See* Compl. ¶¶ 65–67.  Like Plaintiff's allegation of imprudence, the Complaint's loyalty theory is an empty

---

26, 2015) (same); *Turner v. Davis Select Advisers LP*, 2013 WL 11311737, at *3 (D. Ariz. Mar. 19, 2013) (same).  For instance, Bridgeway is one of Plaintiff's forbidden managers, but the Bridgeway Small Cap Value Fund (one of over 400 funds in the "Small-Cap Value" peer group according to Morningstar) has achieved average annual returns over the last five years approximately double those of its benchmark and median peer fund, placing it in the top 5% of its peer group.  AA-APP449 (Bridgeway Small-Cap Value (BRSVX), MORNINGSTAR).  And the fund did not achieve these returns simply by taking sharply more risk than peer funds.  In fact, Morningstar gave the fund a "five-star rating" indicating that the fund's ***risk-adjusted*** performance placed it in the top echelon of its peer group too.  AA-APP443; AA-APP451 (identifying the fund's Sharpe ratio, a common measure of risk adjusted returns, as significantly higher than peers); *see also* MORNINGSTAR, "The Morningstar Rating for Funds," available at https://www.morningstar.com/content/dam/marketing/shared/research/methodology/771945_Mo rningstar_Rating_for_Funds_Methodology.pdf.

vessel.

In sum, Plaintiff offers no basis to conclude that a prudent and loyal fiduciary selecting investments based solely on their financial performance would have avoided each and every investment product offered by the Challenged Managers.  Instead, Plaintiff rests his Complaint on the assertion that ERISA flatly precludes Plan fiduciaries from considering investment products offered by any manager who has ever cast a proxy vote for an ESG-based policy regardless of how those products have performed, and regardless of the fiduciaries' judgment as to their prospects for future performance.  Compl. ¶ 66; *see also id.* ¶ 5 (alleging that "the actions of their investment advisors and managers" in "pursu[ing] ESG policy agendas through proxy voting . . . . give rise to the same ERISA violations").  This is as wrongheaded as it sounds.  Acceptance of Plaintiff's theory would compel ERISA fiduciaries to ignore actual investment performance and instead screen out investment options "based on non-pecuniary factors" (i.e., the manager's proxy voting record), potentially harming participants by depriving them of access to some of the best performing, most popular, and highest rated funds on the market, *see supra* at 16 n.7.  This is the exact practice that Plaintiff insists is forbidden by ERISA. *See* Compl. ¶ 38; *see also id.* ¶¶ 58–59.

## II.    PLAINTIFF'S COUNT II IS DERIVATIVE OF COUNT I AND SO FAILS FOR THE SAME REASONS.

Plaintiff's claim in Count II that Defendants breached their duty to monitor the Plans' investment options is derivative of Count I, and must be dismissed for want of standing and for failure to state a claim as well.  Compl. ¶¶ 93–101.  Plaintiff has never invested in any of the funds he challenges so he cannot have been harmed by any alleged failure to monitor.  And duty-to-monitor claims "inherently require a breach of duty by the appointed fiduciary."  *Singh*, 882 F.3d at 150; *In re Idearc ERISA Litig.*, 2016 WL 7189981, at *7 (N.D. Tex. Oct. 4, 2016).  Because Plaintiff does not plausibly allege a primary breach-of-fiduciary duty claim, his derivative

-18-

monitoring claim necessarily fails as well.  *See, e.g.*, *Camera v. Dell Inc.*, 2014 WL 960897, at *5 (W.D. Tex. Feb. 26, 2014); *Fulmer v. Klein*, 2011 WL 1108661, at *6 (N.D. Tex. Mar. 16, 2011); *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d 681, 695 (W.D. Tex. 2008).  In addition, Plaintiff fails to allege a single fact concerning Defendants' actual monitoring process—including its purported shortcomings.  *See e.g.*, *In re Calpine Corp. ERISA Litig.*, 2005 WL 1431506, at *6 (N.D. Cal. Mar. 31, 2005) ("Plaintiff has not alleged any facts that support his claim that [the defendants] failed to periodically review the performance of the Committee members.").  Thus, Count II must also be dismissed.

## <u>CONCLUSION</u>

For these reasons, the Complaint should be dismissed.

-19-

Respectfully submitted,

Dated:  August 4, 2023

/s/ Mark W. Robertson

| | |
|---|---|
| Dee J. Kelly, Jr. (S.B. # 11217250) | Mark W. Robertson (*pro hac vice*) |
| Russell D. Cawyer (S.B. # 00793482) | (N.Y. Bar # 4508248) |
| KELLY HART & HALLMAN LLP | William D. Pollak (*pro hac vice*) |
| 201 Main Street, Suite 2500 | (N.Y. Bar # 4737037) |
| Fort Worth, Texas 76102 | O'MELVENY & MYERS LLP |
| Tel.:  (817) 332–2500 | 7 Times Square |
| Fax:  (817) 878–9280 | New York, NY 10036 |
| dee.kelly@kellyhart.com | Tel.:  (212) 326–2000 |
| russell.cawyer@kellyhart.com | Fax:  (212) 326–2061 |
| | mrobertson@omm.com |
| | wpollak@omm.com |

Brian D. Boyle (*pro hac vice*)
(D.C. Bar # 419773)
Shannon M. Barrett (*pro hac vice*)
(D.C. Bar # 476866)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Tel.:  (202) 383–5300
Fax:  (202) 383–5414
bboyle@omm.com
sbarrett@omm.com

*Attorneys for Defendants American Airlines,*
*Inc. and the Employee Benefits Committee*

-20-

**CERTIFICATE OF SERVICE**

On August 4, 2023, a true and correct copy of the foregoing document was served upon all persons who have requested notice and service of pleadings in this case via the Court's CM/ECF system.

/s/ Mark W. Robertson
Mark W. Robertson