UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| BRYAN P. SPENCE, § § | |
| Plaintiff, § § | |
| v. § § | Civil Action No. 4:23-cv-00552-O |
| AMERICAN AIRLINES, INC., and § AMERICAN AIRLINES EMPLOYEE § BENEFITS COMMITTEE, § § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motion to Dismiss Amended Complaint (ECF No. 44); Plaintiff's Response (ECF No. 46); and Defendants' Reply (ECF No. 48). Having considered the briefing and applicable law, the Court **DENIES** Defendants' Motion to Dismiss.

## I.     BACKGROUND[1]

Bryan T. Spence ("Spence" or "Plaintiff") is a pilot for American Airlines and a F-16 Instructor Pilot at the Naval Air Station Joint Reserve Base in Fort Worth. American Airlines, Inc. ("American") and American Airlines Employee Benefits Committee ("Committee" and, together with American, "Defendants") manage the American Airlines 401(k) Plan and the American Airlines 401(k) Plan for Pilots (collectively, "the Plan"). In so doing, they are fiduciaries under the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1011, *et seq.* Plaintiff's lawsuit arises out of Defendants' management of the Plan to invest the retirement savings of Plan participants to pursue environmental, social, and governance ("ESG") initiatives.

---

[1] All undisputed facts are drawn from Plaintiff's Amended Complaint (ECF No. 41) unless otherwise specified. At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to Plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

1

ESG interests include environmental sustainability, social justice concerns, and leadership accountability to shareholders.

The Amended Complaint asserts two causes of action under ERISA: (1) Defendants breached their duties of loyalty and prudence and (2) Defendants breached their duty to monitor. Plaintiff initially argued that these breaches manifested in two ways. The first theory of liability is that Defendants used the Plan to invest in ESG funds. By including these ESG funds in the Plan that underperformed compared to similar funds in the broader market, Plaintiff contends that Defendants breached their duties of loyalty and prudence by failing to act solely in the Plan participants' financial interests and remove the imprudent ESG funds (the "Challenged Fund Theory"). However, in subsequent briefing on the class certification issue, Plaintiff expressly abandoned the Challenged Fund Theory to streamline this case and focus on the primary issue.[2]

Plaintiff's second—and remaining—theory of liability is that Defendants violated their fiduciary duty by knowingly including funds "that are managed by investment managers that pursue non-financial and nonpecuniary ESG policy goals through proxy voting and shareholder activism" on their investment portal (the "Challenged Manager Theory"). Specifically, Spence contends that Defendants' Plan primarily contains funds administered by investment management firms like BlackRock, Inc. ("BlackRock"). According to Spence, certain managers like BlackRock pursue pervasive ESG agendas. That is, BlackRock's "engagement strategy . . . covertly converts the Plan's core index portfolios to ESG funds." As a result, BlackRock's investments harm the Plan participants' financial interests because BlackRock focuses on socio-political outcomes instead of exclusively on financial returns. BlackRock is just one of the many investment managers

---

[2] Pl.'s Reply in Support of Mot. for Class Cert. 1, ECF No. 76 (stating that Plaintiff is "narrowing . . . the class definition to exclude the self-directed brokerage window [or the Challenged Fund Theory]" because "focusing this case on proxy voting activism will streamline it").

Spence references by name. Due to such actions by Plan investment managers, Spence argues that Defendants violated their fiduciary duties to act in the Plan participants' financial interests by investing in funds managed by BlackRock and others who engage in conduct, such as proxy voting, to support ESG policies rather than purely pursuing financial gain.

Spence filed this lawsuit as a result of this alleged Plan mismanagement. Defendants filed their Motion to Dismiss on September 1, 2023.[3] Spence responded on September 29, 2023.[4] And Defendants replied on October 13, 2023.[5] The motion is now ripe for the Court's consideration.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Rule "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy this standard, the defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible when the plaintiff pleads factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. Unlike a "probability requirement," the plausibility standard instead demands "more than a sheer possibility that a

---

[3] Defs.' Mot. to Dismiss Am. Compl., ECF No. 41.
[4] Pl's Resp. to Defs.' Mot. to Dismiss Am. Compl., ECF No. 46.
[5] Defs.' Reply in Support of Dismissal, ECF No. 48.

defendant has acted unlawfully." *Id.* Where a complaint contains facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier*, 509 F.3d at 675. However, the Court is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelsius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations and internal quotation marks omitted).

## III.  ANALYSIS

The primary purpose of ERISA is to protect participants and beneficiaries of employee retirement plans. *Pilot Life Ins. Co v. Dedeaux*, 481 U.S. 41, 44 (1987). One way in which ERISA achieves this purpose is by imposing fiduciary duties. *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 307 (5th Cir. 2007). "An ERISA fiduciary must act with prudence, loyalty and disinterestedness, requirements carefully delineated in the statute." *Id.* (citing 29 U.S.C. § 1104(a)). To state a claim for breach of a fiduciary duty under ERISA, a plaintiff must allege, or set forth facts from which the court could reasonably infer, that: (1) the plan is governed by ERISA, (2) the defendant is a fiduciary of the plan, and (3) the defendant breached its fiduciary duties under ERISA, resulting in losses to the plan's participants. *Seidner v. KimberlyClark Corp.*, No.

3:21-CV-867-L, 2023 WL 2728714, at *6 (N.D. Tex. Mar. 30, 2023); *Blackmon v. Zachary Holdings, Inc.*, No. 5:20-CV-988-DAE, 2021 WL 2190907, at *3 (W.D. Tex. Apr. 22, 2021).

At the outset, there is no dispute that the first two elements are met: the Plan is governed by ERISA and Defendants are fiduciaries of the Plan. The focus of Defendants' challenge centers entirely on the sufficiency of the third element—breach of a fiduciary duty. Plaintiff alleges that Defendants' breached their fiduciary duties by "select[ing], includ[ing], and retain[ing]" funds whose managers pursue non-economic ESG objectives instead of focusing exclusively on maximizing financial benefits for Plan participants.[6] And at no point did Defendants "take prompt and effective action to protect the [P]lan and [P]lan participants when the monitored fiduciaries fail[ed] to perform their fiduciary obligations."[7] As explained below, the Court finds that Plaintiff pleads sufficient facts at this stage to survive the Motion to Dismiss.

## A. *Breach of Duty of Prudence*[8]

Under ERISA, a fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). This includes "exercis[ing] prudence in selecting investments," along with "a continuing duty of some kind to monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 529–30 (2015). The prudence standard normally focuses on the fiduciary's conduct in making investment decisions—not on the results. *Pension Benefits Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013).

---

[6] Pl.'s Am. Compl. 48, ECF No. 41.
[7] *Id.* at 51.
[8] Because the duty of prudence includes the duty to monitor, Count II is subsumed within Count I. Therefore, the Court addresses the two duties together.

In acting prudently, the fiduciary's conduct must "give[] appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment." 29 C.F.R. § 2550.404a-1(b)(1)(i). The fiduciary's process must also "take[] into consideration the risk of loss and the opportunity for gain (or other return) associated with the investment or investment course of action compared to the opportunity for gain (or other return) associated with reasonably available alternatives with similar risks." *Id.* § 2550.404a-1(b)(2)(i). But when the alleged facts do not "'directly address[] the process by which the Plan was managed,' a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably 'infer from what is alleged that the process was flawed.'" *Pension Benefits Guar. Corp.*, 712 F.3d at 718 (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009)).

Plaintiff alleges that Defendants breached their fiduciary duty of prudence[9] in two ways: (1) imprudently choosing to invest Plan assets with investment managers who pursue ESG objectives and (2) failing to monitor or stop these managers from pursuing objectives harmful to the Plan participants' investments.[10] According to Plaintiff, funds managed by ESG-focused investment managers have continually underperformed compared to other similarly situated funds due, for example, to investment managers casting proxy votes for ESG measures.[11] Plaintiff contends that Defendants knew or should have known of this underperformance yet selected and retained these investment managers despite knowledge that those managers pursued nonpecuniary

---

[9] Although the Court recognizes that Plaintiff separates the duty of prudence and duty to monitor in distinct counts, the Court treats the duty to monitor as part of the duty of prudence in this analysis.
[10] Pl.'s Am. Compl. 47–53, ECF No. 41.
[11] *Id.* ¶¶ 47, 68–69, 93–95.

ends.[12] In response, Defendants argue that these allegations are insufficient to state a claim because Plaintiff provides no benchmark by which to compare performance.[13] Defendants further contend that Plaintiff neither alleges any facts specifically showing how investment managers' funds underperformed nor provides facts connecting the investment managers' proxy votes for ESG measures to the alleged underperformance.[14] At this stage, the Court finds that Plaintiff has provided sufficient facts to support his breach of prudence claim.

In his Amended Complaint, Plaintiff alleges that Defendants failed to appropriately consider certain facts and circumstances they knew—or should have known—are relevant to particular investments.[15] These facts and circumstances derive from "the known poor performance [of ESG funds] relative to . . . similar investments . . . available in the marketplace," along with the particular "proxy voting and shareholder activism of the investment managers that [Defendants] selected, included, and retain in the Plan."[16] It is plausible that these considerations are "relevant to the particular investment[s]." 29 C.F.R. § 2550.404a-1(b)(1)(i). They are also facts that the fiduciary's process must "take[] into consideration" when evaluating "the risk of loss and the opportunity for gain (or other return) associated with the investment or investment course of action compared to the opportunity for gain (or other return) associated with reasonably available alternatives with similar risks." *Id.* § 2550.404a-1(b)(2)(i). Failure to consider this information gives rise to a plausible inference that Defendants' conduct was imprudent. Just as continuing to invest Plan assets with investment managers despite their ESG objectives likewise allows for the

---

[12] *Id.* ¶¶ 6, 68–69, 94, 98.
[13] Defs.' Mot to Dismiss 16, ECF No. 44.
[14] *Id.* at 16–17.
[15] Pl.'s Am. Compl. ¶¶ 9, 17, 121, 123, ECF No. 41.
[16] *Id.* ¶ 118.

7

plausible inference that Defendants failed to "monitor investment and remove imprudent ones." *Tibble*, 575 U.S. at 529–30.

At this stage, Plaintiff need not plead the exact connection between the investment managers' alleged ESG proxy voting and the financial harm Plaintiff suffered as a result. *Pension Benefits Guar. Corp.*, 712 F.3d at 718 (stating that a complaint survives when there are sufficient facts for the court to make a reasonable inference that the process of choosing investment fund was flawed). Instead, there need only be sufficient facts from which the Court can sufficiently infer a flawed process. Such an inference is possible here. Even so, Plaintiff still pleads more than is required. For example, Plaintiff alleges that investment managers, such as BlackRock, cast proxy votes causing ExxonMobil and Chevron stocks to fall, thereby reducing Plan participants' returns on those investments. BlackRock is a large shareholder in both of those companies and a major manager of the Plan. As Plaintiff points out, various sources have reported on the underperformance of ESG funds, including those managed by BlackRock.[17] Combined, these allegations give rise to a plausible inference that Defendants should have known about these facts and circumstances. It is this failure to consider such information that gives rise to a plausible inference about Defendants' flawed process.

Defendants repeatedly argue that Plaintiff does not "provide a sound basis for comparison—a meaningful benchmark."[18] However, the Court determines that requiring a benchmark for measuring performance is not required at this stage given the inherent fact questions such a comparison involves. And, importantly, the Fifth Circuit has not imposed a performance-benchmark requirement. *See Blackmon*, 2021 WL 2190907, at *5 (declining to dismiss the complaint when the plaintiff did not provide a performance benchmark); *Seidner*, 2023 WL

---

[17] Pl.'s Am. Compl. ¶¶ 45, 47, ECF No. 41.
[18] Defs.' Mot to Dismiss 16, ECF No. 44.

2728714, at *7 ("The Fifth Circuit has yet to adopt or express an opinion regarding application of the Eight Circuit's "meaningful benchmark" standard in ERISA fiduciary duty cases."). Thus, while Plaintiff indicates that ESG investment funds have "known poor performance relative to benchmark indices and to similar investments . . . available in the marketplace,"[19] the Court will defer evaluation of any comparators for future stages of this litigation. Contrary to Defendants' characterization, the Court finds that Plaintiff has pointed to at least some benchmark for inferring the quality of the investment managers' performance given the data provided on ESG funds' "established record of underperformance."[20]

Importantly, Plaintiff need not marshal evidence of every ESG investment that has financially harmed Plaintiff and the other Plan participants at the pleading stage. Instead, Plaintiff has adequately alleged that Defendants breached their duty of prudence by selecting, including, and retaining investment managers who pursue ESG objectives rather than focusing exclusively on maximizing financial benefits. These specific actions—selecting, including, and retaining ESG-oriented investment managers—allow the Court to reasonably infer that Defendants' process is flawed because it allowed Plan assets to be used to support ESG strategies. Combined with the allegations that Defendants failed to monitor those responsible for Plan assets, the Court finds that Plaintiff has alleged sufficient facts supporting his allegations of breach of prudence at this stage. Therefore, Plaintiff's breach of prudence and monitoring claims survive the Motion to Dismiss.

### B. *Breach of Duty of Loyalty*

"ERISA's duty of loyalty is 'the highest known to the law.'" *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294 (5th Cir. 2000) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)). As part of the duty of loyalty, an ERISA plan fiduciary must "discharge his duties with

---

[19] Pl.'s Am. Compl. ¶ 118, ECF No. 41.
[20] *Id.* ¶¶ 44–45.

respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a). These benefits are "*financial* benefits . . . that trustees who manage investments typically seek to secure for the trust's beneficiaries." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014). This loyalty requires the fiduciary to "not subordinate the interests of the participants and beneficiaries in their retirement income or financial benefits under the plan to other objectives, and may not sacrifice investment return or take on additional investment risk to promote benefits or goals unrelated to interests of the participants." 29 C.F.R. § 2550.404a-1(c)(1). Neither may the fiduciary "accept expected reduced returns or greater risks to secure [collateral] benefits [other than investment returns]." 29 C.F.R. 2550.404a-1(c)(2).

Plaintiff alleges that Defendants breached their duty of loyalty in choosing to invest Plan assets with investment managers who pursue ESG objectives instead of exclusively financial ends.[21] According to Plaintiff, Defendants did so as part of a company-wide commitment to ESG goals, knowing that investment managers—such as BlackRock—invest in and vote for ESG policies.[22] Therefore, Plaintiff contends that this company-wide focus on ESG goals violated Defendants' duty of loyalty. In response, Defendants concede that they have a company commitment to ESG initiatives.[23] However, they argue that such a commitment is made pursuant to their "corporate hat," which separate from, and does not affect, their obligations when wearing their "fiduciary hat."[24] According to Defendants, Plaintiff also "says absolutely nothing regarding the Committee's motivations in selecting investment options, and nothing regarding how those

---

[21] *Id.* ¶¶ 6, 9, 118, 120.
[22] *Id.* ¶¶ 40–41,
[23] Defs.' Mot to Dismiss 21–22, ECF No. 44.
[24] *Id.*

10

selections supposedly benefited Defendants personally, financially or otherwise."[25] Without pointing to specific motivations, Defendants argue that there is no plausible basis for suggesting that investment managers were motivated by anything but financial aims.[26] Notwithstanding Defendants' arguments, the Court finds that Plaintiff has alleged sufficient facts at this stage to establish a breach of the duty of loyalty.

To begin, whether the company-wide ESG policy motivated Defendants' choice to invest Plan funds with ESG-oriented investment managers is a fact question that is not appropriate to resolve at this stage. *Cf. Espinoza v. Mo. Pac. R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985) ("On a Rule 12(b)(6) motion to dismiss for failure to state a claim . . . the district court must accept the truth of plaintiff's allegations or rely upon only those matters outside of the pleadings with respect to which there is no genuine issue of fact."). And even though Defendants are allowed to wear "multiple hats"—wearing the "corporate hat" on the one hand and the "fiduciary hat" on the other—this reality does not relieve Defendants of their fiduciary duties under ERISA. *See Main v. Am. Airlines Inc.*, 248 F. Supp. 3d 786, 792–93 (N.D. Tex. 2017) (rejecting the argument that it is illogical to infer disloyalty from investment practice allowed by federal regulation in a different context because Defendants are not otherwise relieved from their fiduciary duties). The cases Defendants cite in support of their "multiple hat" argument involve challenges to whether the defendant was actually a fiduciary. *See, e.g.*, *Pegram v. Herdich*, 530 U.S. 211, 214 (2000) ("The question in this case is whether [the defendant's actions] are fiduciary acts."). No such challenge exists here.

Next, the argument that Plaintiff does not allege supporting facts about the Defendants' motivations and personal benefit is not fatal. Indeed, it would be unreasonable for Plaintiff to plead

---

[25] *Id.* at 21.
[26] *Id.* at 21–22.

11

such facts at this early stage when this information resides with the Defendants. *Cf. Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) ("[W]hen discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide that information in her complaint."). To require such a heightened standard of pleading at the beginning of the lawsuit would cause "the remedial scheme of the statute [to] fail, and the crucial rights secured by ERISA [to] suffer." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009). The Court declines to require "an ERISA plaintiff alleging breach of fiduciary duty . . . to plead details to which [he] has no access" when "the facts alleged tell a plausible story." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016).

In the Amended Complaint, Plaintiff articulates a plausible story: Defendants' public commitment to ESG initiatives motivated the disloyal decision to invest Plan assets with managers who pursue non-economic ESG objectives through select investments that underperform relative to non-ESG investments, all while failing to faithfully investigate the availability of other investment managers whose exclusive focus would maximize financial benefits for Plan participants. Taking these allegations as true, the Court finds that Plaintiff plausibly alleges at this stage that Defendants violated their duty of loyalty under ERISA by not acting with an "eye single to the interests of the participants and beneficiaries." *Main*, 248 F. Supp. 3d. at 793 (quoting *Donovan*, 680 F.2d at 271). These allegations do more than reach the mere conclusion that Defendants acted disloyally. Instead, Plaintiff's allegations provide specific facts outlining a plausible theory for how Defendants breached their duty of loyalty by allowing their corporate goals to influence their fiduciary role. Therefore, Plaintiff's breach of loyalty claim survives the Motion to Dismiss.

## IV. CONCLUSION

For these reasons, the Court determines that Plaintiff pleads sufficient facts at this stage to state plausible claims in Count I and Count II of his Amended Complaint. Therefore, the Court **DENIES** Defendants' Motion to Dismiss.[27]

**SO ORDERED** this **21st** day of **February, 2024**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[27] Because Counts I and II simultaneously rest on separate theories of liability—the Challenged Fund Theory and the Challenged Managers Theory—the Court denies Defendants' motion based on plausible facts supporting the Challenged Managers Theory. Given this determination, the Court need not also consider the Challenged Fund Theory that Plaintiff no longer intends to pursue.