**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **BRYAN P. SPENCE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No.  4:23-cv-00552-O** |
| | § | |
| **AMERICAN AIRLINES, INC.,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## ORDER ON MOTION FOR CLASS CERTIFICATION

Before the Court are Plaintiff's Motion for Class Certification (the "Motion") (ECF No. 59), filed November 21, 2023; Defendants' Response (ECF No. 68), filed December 12, 2023; Plaintiff's Reply (ECF No. 76), filed December 26, 2023; and Defendants' Sur-reply (ECF No. 85), filed January 22, 2024. Having reviewed the briefing and applicable law, the Court **GRANTS** the Motion's request to certify a class as to Plaintiff's Proxy Voting Claim. However, the Court **DENIES as MOOT** the Motion's request to certify a class as to the ESG Fund theory due to Plaintiff's decision to forego that theory of liability.

## I.      BACKGROUND

In this putative class action, Plaintiff Bryan P. Spence (the "Plaintiff") seeks to represent a class of participants in the American Airlines, Inc. 401(k) Plan for Pilots and two participating plans of the Master Trust for DC Plans of American Airlines, Inc. and Affiliates (collectively, the "Plan").[1] Under the Employee Retirement Income Security Act of 1974 ("ERISA"), the Plan is an employee pension benefit plan as described under 29 U.S.C. § 1002(2)(A) and a defined contribution plan under 29 U.S.C. § 1002(34). The Plan is a qualified plan under 26 U.S.C. § 401

---

[1] Pl.'s Br. in Support of Mot. for Class Certification 1–2, ECF No. 59-1.

and is of the type known as a "401(k) plan."[2] According to Plaintiff, Plan participants entrusted Defendants American Airlines, Inc. and American Airlines, Inc. Employment Benefits Committee (collectively, the "Defendants") to manage employee pensions consistent with ERISA.[3]

Rather than comply with ERISA, Plaintiff alleges that Defendants breached their fiduciary duties by pursuing environmental, social, and governance ("ESG") goals to the detriment of Plan participants.[4] By pursuing ESG goals, Defendants gave Plan assets to fund managers, such as BlackRock, who allegedly ignored financial returns as the exclusive purpose and lowered the value of Plan participants' investments.[5] According to Plaintiff, "[i]t was disloyal for Defendants to adopt and use this strategy, because it was done for their own ESG purposes rather than an 'eye single to the interests of the participants and beneficiaries.'"[6] Likewise, Plaintiff argues that Defendants' investment strategy was imprudent because it is well known that ESG funds are associated with poor performance given the detrimental effects of such activism on stock prices.[7]

To remedy these alleged ERISA violations, Plaintiff filed this lawsuit individually and on behalf of a proposed class of Plan participants and beneficiaries. ERISA authorizes participants in a qualifying plan to bring an action on behalf of other participants to enforce the statute's fiduciary obligations and remedial provisions, as well as recover all losses to a plan caused by a breach of a fiduciary duty. 29 U.S.C. §§ 1132(a)(2), 1109(a). Pursuant to ERISA's statutory authorization, Plaintiff brings this action "in a representative capacity on behalf of the [P]lan as a whole" to (1) recover and obtain all losses resulting from the alleged breaches of Defendants' fiduciary duties

---

[2] Pl.'s Am. Compl. ¶ 23, ECF No. 41.
[3] *Id.* ¶ 130.
[4] *Id.* ¶¶ 105–07, 110, 117–24, 125–33.
[5] *Id.* ¶¶ 117–20
[6] Pl.'s Br. in Support of Mot. for Class Certification 4, ECF No. 59-1 (quoting *Main v. Am. Airlines, Inc.*, 248 F. Supp. 3d 786, 793 (N.D Tex. 2017)).
[7] Pl.'s Am. Compl. ¶¶ 35–38, 68–93, ECF No. 41.

and (2) obtain injunctive relief to prevent ongoing and future ERISA violations arising from Defendants' ESG activism.[8]

## II.   LEGAL STANDARD

The class action is "'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). The party seeking class certification "bear[s] the burden of proof to establish that the proposed class satisfies the requirements of Rule 23." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). "The decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of [R]ule 23." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). A district court must "look beyond the pleadings to 'understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.'" *Stukenberg*, 675 F.3d at 837 (quoting *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003)).

Federal Rule of Civil Procedure 23 governs whether a proposed class falls within this limited exception. "To obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007).  Rule 23(a)'s four threshold requirements are:

(1)     the class is so numerous that joinder of all members is impracticable;
(2)     there are questions of law or fact common to the class;
(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)     the representative parties will fairly and adequately protect the interests of the class.

---

[8] Pl.'s Br. in Support of Mot. for Class Certification 5, ECF No. 59-1.

FED. R. CIV. P. 23(a). These four threshold conditions are "commonly known as 'numerosity, commonality, typicality, and adequacy of representation.'" *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020) (citing FED. R. CIV. P. 23(a)) (additional citation and internal quotation marks omitted). Additionally, the Fifth Circuit has articulated an "ascertainability" doctrine implicit in Rule 23. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23."). "To maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam) (citations omitted). Along with Rule 23(a)'s requirements, a plaintiff seeking certification must also show that at least one of the grounds identified in Rule 23(b) exists. FED. R. CIV. P. 23(b).

Class certification is routine in ERISA cases because it "furthers the purpose of ERISA section 502(a)(2), acting as a procedural safeguard to ensure that recovery 'inures to the benefit of the [P]lan as a whole.'" *Garthwait v. Eversource Energy Co.*, No. 20-cv-00902, 2022 WL 1657469, at *9 (D. Conn. May 25, 2022) (quoting *Cooper v. Ruane Cunnif & Goldfarb, Inc.*, 990 F.3d 173, 194 (2d. Cir. 2021)). To this end, courts often determine that ERISA breach of fiduciary duty claims are suitable for class certification because such claims inherently involve plan-wide liability and remedies that affect the interests of all plan participants. *E.g.*, *Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3rd. Cir. 2009).

### III.    ANALYSIS

Plaintiff seeks certification of the following proposed class based on Defendants' alleged breaches of their fiduciary duties:

> All participants and beneficiaries of the American Airlines, Inc. 401(k) Plan and/or the American Airlines, Inc. 401(k) Plan for Pilots from June 1, 2017 through the

date of judgment (the "Class Period"), excluding (i) Plan participants and beneficiaries who invested solely through the Plan's self-directed brokerage account, and (ii) Defendants and any of their directors, officers, or employees with responsibility for the Plans investment or administration (the "Class").[9]

To certify the proposed class, Plaintiff must demonstrate ascertainability, satisfy all four Rule 23(a) requirements, and fall within one of the class action types identified in Rule 23(b). Defendants oppose certification on the grounds that Plaintiff is an inadequate representative who cannot prove typicality and commonality.[10] Notwithstanding Defendants' arguments in opposition, the Court finds that Plaintiff sufficiently satisfies all requirements for class certification.

### A. Ascertainability

As a threshold matter, the Court first assesses whether Plaintiff's proposed class is ascertainable. Although Defendants do not appear to challenge the ascertainability of the proposed class, "[t]here can be no class action if the proposed class is 'amorphous' or 'imprecise.'" *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 n.5 (5th Cir. 2007). In other words, along with the requirements set out in Rules 23(a) and (b), a class must also be "adequately defined and clearly ascertainable." *In re Deepwater Horizon*, 739 F.3d 790, 821 (5th Cir. 2014). Ascertainability is met only when class members can be ascertained by reference to objective criteria. *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam) (citations omitted); *DeOtte v. Azar*, 332 F.R.D. 188, 196 (N.D. Tex. 2019). And while a court "need not know the identity of each class

---

[9] Pl.'s Reply in Support of Mot. for Class Certification 1–2, ECF No. 76. Because Plaintiff dropped the ESG Fund Theory, the Court adopts the proposed class found in Plaintiff's reply rather than the initial proposed class. *See id.* at 2 ("Plaintiff will limit his claims . . . to whether Defendants breached their fiduciary duties by fund managers controlling the Plan's Target Date Funds and Index Funds to engage in ESG activism through proxy votes" and "does not oppose narrowing the class to exclude Plan participants who invested solely through the self-directed brokerage window"). Additionally, the proposed class language in Plaintiff's reply is substantively the same except that it adds in language to clarify which Plan participants are not covered in the proposed class. *Compare id.* at 1–2 *with* Pl.'s Br. in Support of Mot. for Class Certification 5, ECF 59-1.

[10] Defs.' Opp. to Pl.'s Mot. for Class Certification 7–24, ECF No. 68.

member before certification," class members must be ascertainable "at some stage of the proceeding." *Frey v. First Nat'l Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015) (internal quotation marks omitted). The Fifth Circuit has upheld the ascertainability of a class even when a definition necessitates individualized membership assessments that might *follow* litigation, so long as the class definition is sufficiently clear. *E.g.*, *Mullen v. Treasure Chest Casino*, 186 F.3d 620, 624 (5th Cir. 1999).

In ERISA cases such as this one, Plaintiff maintains that members of the proposed class can be identified from Plan records in the custody of Defendants or the Plan's recordkeepers.[11] This is consistent with how this Court has previously assessed the ascertainability of putative ERISA class actions. *See, e.g.*, *In re 2014 RadioShack ERISA Litig.*, No. 4:14-cv-00959-O, 2016 WL 6561597, at *1 (N.D. Tex. Jan. 26, 2016) (concluding that ascertainability is established where the identify of class members is "ascertainable from records kept with respect to the Plans and from other objective criteria"). Noting that Defendants do not challenge that the Plan's records will be sufficient to precisely identify each Plan participant and beneficiary, the Court finds that Plaintiff's proposed class is sufficiently ascertainable. Accordingly, the Court turns to a review of the formal requirements outlined in Rule 23(a) and (b) for class certification.

**B.  Rule 23(a)**

**1.  Numerosity**

The Court begins with the first Rule 23 requirement—numerosity—which Defendants do not contest. Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impractical." FED. R. CIV. P. 23(a)(1). However, the actual number of class members is not necessarily "the determinative question, for 'the proper focus (under Rule 23(a)(1)) is not

---

[11] Pl.'s Br. in Support of Mot. for Class Certification 6, 16–17, ECF No. 59-1.

on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors.'" *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (quoting *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1022 (5th Cir. 1981)). "[A] number of facts other than the actual or estimated number of purported class members may be relevant to the 'numerosity' question; these include, for example, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman*, 651 F.2d at 1038 (citing *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980)).

Here, the proposed class in this ERISA action easily meets the numerosity requirement without consideration of facts beyond the number of class members. Plaintiff estimates that the number of Plan participants and beneficiaries exceeds 100,000.[12] Courts in the Fifth Circuit regularly certify classes with far fewer members. *See, e.g.*, *Mullen*, 186 F.3d at 625 ("[T]he size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement."); *Slipchenko v. Brunel Energy, Inc.*, No. 11-1465, 2013 WL 4677918, at *6 (S.D. Tex. Aug. 30, 2013) (finding joinder of as few as 67 individuals to be impracticable in an ERISA case). Additionally, Defendants do not contest that the numerosity requirement is met. This is likely because the unchallenged estimate of approximately 100,000 is sufficiently large to make joinder impracticable, if not impossible. Because the Court finds that joinder of all 100,000 class members would be impractical, Plaintiff's proposed class clearly satisfies the numerosity requirement for class certification.

---

[12] Pl.'s Am. Compl. ¶ 104, ECF No. 41; Pl.'s Br. in Support of Mot. for Class Certification 7, ECF No. 59-1.

## 2. Commonality

Plaintiff also argues that this lawsuit presents several common questions. The questions of law and fact that are common to the proposed class include:

- Whether Defendants breached their fiduciary duties;
- Whether losses were suffered by the Plan;
- Whether the fiduciaries had policies and procedures to investigate the merits of the investments and to structure the investments;
- Whether the fiduciaries had policies and procedures to monitor the prudence of the investments on an ongoing basis;
- Whether or not the fiduciaries discharged their duties with respect to the Plan solely in the interest of the participants and beneficiaries for the exclusive purpose of providing benefits to participants and their beneficiaries; and
- Whether, and what, equitable or other relief should be imposed to remedy the fiduciary breaches and to prevent future ERISA violations.[13]

In his reply, Plaintiff also provides additional common questions relevant to this prospective class action:

- Would a prudent fiduciary have stopped ESG proxy votes?
- Did Defendants place their political interests above the participants' financial ones when they allowed proxy votes to support ESG measures?
- Did BlackRock proxy votes supporting ESG proxy votes diminish the Plan's assets?[14]

According to Plaintiff, "[a]ny one of these questions will be common across the class."[15] That is because "no class member could individually testify" since "the ESG proxy votes were uniformly done without regard to individual Plan participants."[16] By addressing these questions, Plaintiff argues that the class-wide proceeding will yield common answers to resolve this litigation.[17]

In response, Defendants contend that "Plaintiff cannot prove commonality even for a narrower class limited to the Proxy Voting theory."[18] Defendants argue that the assertion regarding

---

[13] Pl.'s Br. in Support of Mot. for Class Certification 9, ECF No. 59-1.
[14] Pl.'s Reply in Support of Mot. for Class Certification 4, ECF No. 76.
[15] *Id.*
[16] *Id.*
[17] Pl.'s Br. in Support of Mot. for Class Certification 8, ECF No. 59-1.
[18] Defs.' Opp. to Pl.'s Mot. for Class Certification 23, ECF No. 68.

the uniformity of proxy votes without regard to individual Plan participants "ignores that different class members were affected by different proxy votes."[19] As a result, "different class members were affected by different proxy votes and . . . breach and loss as to each proxy vote is necessarily subject to its own discrete proof and analysis."[20] In support of this, Defendants point to the analysis conducted by Plaintiff's expert, Dr. J.B. Heaton, which "focus[es] on a tiny subset of proxy votes" and, as a result, "underscores that the answers to Plaintiff's third 'common question' . . . will vary by proxy."[21] In other words, Defendants characterize Plaintiff's Proxy Voting theory as dependent on a "proxy vote-by-proxy vote analysis" that "precludes a finding of typicality."[22] Despite this rebuttal, the Court finds that Plaintiff satisfies commonality.

The Court looks to Rule 23(a)(2)'s requirements to assess these arguments. According to Rule 23(a)(2), a proposed class must contain at least one question of fact or law common to all class members. FED. R. CIV. P. 23(a)(2). "'[E]ven a single common question will do.'" *In re Deepwater Horizon*, 739 F.3d at 812 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). Rule 23 is a procedural rule that should not be treated as "a dress rehearsal for the merits." *Id.* at 811. To this end, a district court is not required to "determine whether the class contain[s] individuals who have not actually suffered any injury, because this would [amount] to a determination of the truth or falsity of the parties' contentions, rather than an evaluation of those contentions' commonality." *Id.* at 812.

To establish commonality, Plaintiff must show that potential class members suffered the same injury and present common questions capable of class-wide resolution. "In order to satisfy commonality under *Wal–Mart*, a proposed class must prove that the claims of every class member

---

[19] Defs.' Surreply in Opp. to Pl.'s Mot. for Class Certification 5, ECF No. 85.
[20] *Id.*
[21] *Id.* at 6.
[22] *Id.*

'depend upon a common contention . . . that is capable of class-wide resolution.'" *Stukenberg*, 675 F.3d at 838 (quoting *Wal–Mart*, 564 U.S. at 350). This occurs where "the contention is 'of such a nature . . . that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* (quoting *Wal–Mart*, 564 U.S. at 350). Put plainly, "Rule 23(a)(2) requires that all of the class member[s'] claims depend on a common issue of law or fact whose resolution 'will *resolve* an issue that *is central to the validity* of each one of the [class members'] claims in one stroke.'" *Id.* at 840 (quoting *Wal–Mart,* 564 U.S. at 350).

The Court finds that Plaintiff's claims are capable of class-wide resolution. The Amended Complaint identifies similar or identical violations of ERISA's prudence and loyalty fiduciary duties. As a result of those alleged violations, class members suffered injuries that flow from a common set of facts. Damages for such injuries can be calculated on a class-wide basis according to the declaration of Plaintiff's expert, Dr. J.B. Heaton.[23] Even if the damages are diverse, finding in favor of Plaintiff on his ERISA claims would also resolve the ERISA claims of the class. *See In re Deepwater Horizon*, 739 F.3d at 810–12 (explaining that commonality exists when class members suffered the same injury from the alleged injurious conduct even when the resulting damages are diverse). To remedy these common injuries, the relief would be the same for all class members: (1) "to obtain all losses resulting from each breach of fiduciary duty" and (2) "for injunctive relief to prevent ongoing and future violations of ERISA" based on ESG activism.[24] "The bottom-line question under commonality . . . is whether the relief the named plaintiffs seek from the Court will resolve all class members' legal claims." *Vita Nuova, Inc. v. Azar*, No. 4:19-cv-532, 2020 WL 8271942, at *8 (N.D. Tex. Dec. 2, 2020). Focusing on that bottom-line question here, the Court determines that class-wide resolution of one or more common questions would

---

[23] Heaton Decl. ¶¶ 92–99, ECF No. 59-2.
[24] Pl.'s Br. in Support of Mot. for Class Certification 5, ECF No. 59-1.

provide relief to all class members given, for instance, that ESG proxy votes were uniformly cast without regard to individual Plan participants and beneficiaries.

Finally, it is worth emphasizing that courts typically find a defendant's liability under ERISA to be a question common to all class members "because a breach of fiduciary duty affects all participants and beneficiaries." *Iannone v. AutoZone, Inc.*, No. 19-cv-02779, 2022 WL 17485953, at *6 (W.D. Tenn. Dec. 7, 2022). Indeed, ERISA breach-of-fiduciary duty actions generally hinge on the uniform conduct of plan fiduciaries with respect to the plan. *Hughes v. Nw. Univ.*, 595 U.S. 170, 176–77 (2022). Determining whether a defendant's retention of an underperforming investment breached the fiduciary duty will rely on common evidence that will lead to common answers driving the resolution of the claim, leading courts to find that ERISA breach of fiduciary duty claims satisfy the commonality requirement. *See, e.g.*, *Garthwait,* 2022 WL 1657469, at *10 (explaining that the "alleged Plan-wide mismanagement similarly affected all putative class members"); *Schering Plough*, 589 F.3d at 599 n.11 (holding that "commonality is quite likely to be satisfied" in ERISA fiduciary breach actions because such actions are undertaken on behalf of a plan for duties owed at the plan level); *Tussey v. ABB, Inc*., 2007 WL 4289694, at *5 (W.D. Mo. 2007) (finding commonality satisfied because "the focus is on the conduct of the Defendants"); *Stoffels v. SBC Commc'ns, Inc.*, 238 F.R.D. 446, 452 (W.D. Tex. 2006) (finding the question of whether "ERISA was violated by [a defendant's] alleged mismanagement of the averred plan" to be a common question). "What matters to class certification is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350.

Like Plaintiff, the potential class members in this case suffered the same type of injury from the alleged breaches of Defendants' fiduciary obligations through a common course of conduct. Defendants do not dispute that each class member is a participant in or beneficiary of the Plan. Instead, Defendants only argue that "Plaintiff ignores that different class members were affected by different proxy votes and . . . each proxy vote is necessarily subject to its own discrete proof and analysis."[25] But this is unavailing when the commonality inquiry focuses on Defendants' conduct. *Hughes*, 595 U.S. at 176–77; *Tussey v. ABB, Inc.*, 2007 WL 4289694, at *5. Focusing on Defendants' conduct here, a determination of the truth or falsity of the allegations that Defendants' mismanagement and ESG activism resulted in fiduciary breaches that harmed the entire Plan would "resolve . . . issue[s] that [are] central to the validity of . . . the claims in one stroke." *Wal–Mart*, 564 U.S. at 350. That is because Defendants' fiduciary obligations uniformly ran Plan-wide to impact all Plan participants and beneficiaries. And such a determination will rely on common evidence that will "generate common answers apt to drive the resolution of the litigation." *Wal–Mart*, 564 U.S. at 350.

While Defendants may be correct that individual class members suffered diverse impacts in the form of damages, this potential difference does not erase the fact that all class members allegedly suffered the same core injury. *Cf. In re Deepwater Horizon*, 739 F.3d at 810–11 (explaining that the "same injury" requirement is satisfied "even when the resulting injurious effects—the damages—are diverse."). At bottom, Plaintiff's primary contention is that the systemic presence of ESG activism in the Plan—be it the disloyal pursuit of Defendants' own ESG goals or imprudently allowing ESG-focused managers to handle investments—harmed Plan participants and beneficiaries. This conduct alone raises a common question that satisfies the

---

[25] Defs.' Surreply in Opp. to Pl.'s Mot. for Class Certification 5, ECF No. 85.

commonality prong. As *Wal-Mart* makes clear, "even a single common question will do." 564 U.S. at 359. And, here, there are multiple common questions applicable to the proposed class, including the most fundamental questions of whether Defendants' alleged mismanagement of the Plan constituted a breach of their fiduciary duties. Therefore, the Court finds that Plaintiff's identifies questions common to all class members that are capable of resolving this litigation.

### 3. Typicality

Plaintiff next contends that his ERISA claims are typical of the entire class.[26] As with other class members, Plaintiff participated in the Plan and seeks relief for the injuries suffered because of Defendants' purported mismanagement.[27] Because of the nature of the claims and underlying misconduct alleged, Plaintiff represents that he does not assert any legal theories differing from, or conflicting with, the proposed class.[28] Defendants argue that factual differences reveal there is no typicality, "because each proxy vote must be evaluated on its own individual merits."[29] Circumstances that require the Court to analyze each class member's circumstances, Defendants argue, defeat typicality and make class resolution inappropriate for this litigation.[30] But for the similar reasons that Defendants' commonality challenge failed, the Court finds that Plaintiff's claims are typical of the entire class: either Defendants fulfilled their fiduciary duties with respect to Plan management, including the proxy votes of every investment manager, or they did not. *Cf. Glass Dimensions, Inc. v. State Street Bank & Trust Co.*, 285 F.R.D. 169, 178 (D. Mass. 2012) (finding typicality requirement met based on claims about conduct of investment managers).

---

[26] Pl.'s Br. in Support of Mot. for Class Certification 10–11, ECF No. 59-1.
[27] *Id.* at 11.
[28] *Id.*
[29] Defs.' Opp. to Pl.'s Mot. for Class Certification 18, ECF No. 68.
[30] *Id.*

Typicality under Rule 23(a)(3) "limit[s] the class claims to those fairly encompassed by the named Plaintiff's claim." *Gen. Tel. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (citations omitted). "[T]he critical inquiry is whether the named plaintiff's claims have the same essential characteristics of the putative class." *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 736 (5th Cir. 2023) (citation omitted). Where the class representative's claims arise from a different "course of conduct" or do not "share the same legal theory" as the remainder of the class, then his claims are not typical. *Id.* (quotations omitted). But "[i]f the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) (internal quotation marks omitted) (quoting 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE P 23.24[4] (3d ed. 2000)).

Often, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 158 n.13. "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* "Like commonality, the test for typicality is not demanding." *Mullen*, 186 F.3d at 625 (citations omitted). Instead, typicality "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Id.* In ERISA cases, the inherently representative nature of such actions means that the named plaintiff's claims are "necessarily typical of those of the rest of the class." *Enron Corp.*, 2006 WL 1662596, at *11 (citation omitted); *see also Cunningham v. Cornell Univ.*, No. 16-cv-6625-PKC, 2019 WL 275827, at *7 (S.D.N.Y. Jan. 22, 2019) (finding typicality met when plaintiffs "alleged that the defendants' failure to manage the Plans affected all proposed members of the class").

14

This case presents no exception. Like other class members, Plaintiff participated in the Plan and seeks relief for injuries suffered as a result of Defendants' alleged fiduciary breaches. There is nothing to suggest that Defendants regarded Plan participants and beneficiaries differently. Instead, Defendants appear to uniformly manage the Plan as a single entity, treating all participants and beneficiaries consistently. The ERISA claims at issue in this lawsuit are based on the same Plan-wide allegations and pursue the same forms of relief. By the very nature of claims and underlying misconduct alleged, Plaintiff's claims "arise from the same course of events and turn on the same legal issues as the claims of class members: the [D]efendant[s'] alleged breach of fiduciary duty harming the Plan." *Garthwait*, 2022 WL 1657469, at *11 (finding typicality satisfied). As a result, the Court finds that Plaintiff's claims are typical of—in fact, identical to—those of the entire class.

Like commonality, the factual circumstances need not be identical for each of the class members—some variation among members is permissible. *See Bear Creek*, 2021 WL 5449038 at *16 (certifying a class containing diverse members of Catholic, United Methodist, and Southern Baptist faith traditions because all class members pursued the same claims and sought the same relief). Even accepting as true Defendants' assertion that different proxy votes impact different class members, this argument functions as a distinction without a real difference. The claims at issue in this case arise from the same general course of conduct and share the same legal theory regardless of the participant or beneficiary. *Angell*, 67 F.4th at 736. Should Plaintiff's Proxy Voting theory prevail at trial and lead to the conclusion that Defendants breached their fiduciary duties under ERISA, such a Plan-wide finding would extend to all class members. In other words, Defendants either breached their fiduciary duties or they did not. The requested injunctive relief would equally provide relief to all participants and beneficiaries by enjoining Defendants from

allowing ESG activism and ESG-oriented proxy voting to cause further harm the Plan. Any factual differences do not defeat typicality in this regard given that all members of the class participated in the Plan that failed to exclusively seek financial returns. With respect to the specific losses a particular class member suffered based on a given proxy vote, that is a question of damages that can be calculated after a finding of liability.

For these reasons, the Court finds that the Plaintiff's claims "have the same essential characteristics" of the class as a whole. *James*, 254 F.3d at 571. These claims, regardless of the impacted Plan participant or beneficiary, are so interrelated that each member will be fairly protected. *Falcon*, 457 U.S. at 158 n.13. Like other ERISA class actions, the inherently representative nature of claims based on the alleged fiduciary breaches and mismanagement of the entire Plan are enough to satisfy typicality. *Enron Corp.*, 2006 WL 1662596, at *11; *Cunningham*, 2019 WL 275827, at *7. And keeping in mind that "[l]ike commonality, the test for typicality is not demanding," the Court declines to assign significant weight to slight factual differences based on specific proxy votes. *Mullen*, 186 F.3d at 625 (citations omitted). Therefore, the Court determines that Plaintiff's causes of action are typical of the proposed class.

### 4. Adequacy

Having established that the class is sufficiently numerous and that Plaintiff's claims common and typical, the Court now assesses the final Rule 23(a) requirement: adequacy of the representation. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Under the adequacy requirement, courts consider "three separate but related inquiries": "(1) the zeal and competence of the representatives' counsel"; "(2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the

interests of absentees"; and "(3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017) (cleaned up) (citing *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005)). "[The] requirements [of commonality and typicality] . . . tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." *Falcon*, 457 U.S. at 158 n.13. Throughout litigation, the court "must continue carefully to scrutinize the adequacy of representation and withdraw certification if such representation is not furnished." *Grigsby v. N. Miss. Med. Center, Inc.*, 586 F.2d 457, 462 (5th Cir. 1978).

Plaintiff passes the low adequacy bar in this case. To begin, Plaintiff's interests are tightly aligned with those of all other class members due to the inherently representative nature of ERISA claims. Indeed, it is the "general rule that there is 'a relatively low likelihood of intra-class conflict'" in fiduciary breach actions "because the recovery is to the Plan, not to the individual Plaintiffs." *JPMorgan Chase Bank*, No. 17-cv-564, 2019 WL 2428631, at *8 (S.D.N.Y. June 11, 2019). That general rule is readily applicable here. Plaintiff brings claims on behalf of the entire Plan. The shared legal position, objective in establishing Defendants' liability, and ultimate relief sought eliminate any conflicts between Plaintiff's individual interests and the interests of the class.

Nevertheless, Defendants dispute the adequacy of Plaintiff as the representative for this putative class action for two reasons. First, Defendants contend that Plaintiff's abandonment of one theory of liability reveals his inadequacy as a class representative.[31] Defendants express concern that there may be purported class participants that would also fall under the abandoned theory of liability and therefore be precluded from prosecuting those claims in the future.[32]

---

[31] Defs.' Surreply in Opp. to Pl.'s Mot. for Class Certification 2, ECF No. 85.
[32] *Id.*

Because Plaintiff has not sought to amend his complaint a second time to remove the abandoned claims, Defendants assert that Plaintiff has "taken no steps to protect absent class members from the full preclusive effect of a judgment on the broad claims articulated in his Amended Complaint."[33] To be sure, potential preclusion against absent class members is a serious concern. *See Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 413 (5th Cir. 2017) (recognizing that "[t]he risk of preclusion" is often uncertain). This is especially true given that courts inconsistently apply claim preclusion to class actions. *See, e.g.*, *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 578 (E.D. Tenn. 2014) (commenting on the "considerable disagreement among courts on this issue"). But after careful review,[34] the Court is satisfied that the modification of the class definition to "exclude[e] (i) Plan participants and beneficiaries who invested solely through the Plan's self-directed brokerage account" sufficiently obviates any preclusion concern here.

Second, Defendants similarly suggest that Plaintiff's failure to file an expert report discussing the voting patterns of *other* investment managers for the Plan risks precluding absent class members from challenging other proxy votes.[35] To the extent this is an attempt by Defendants to raise a conflict of interest between Plaintiff and absent class members, the Court finds that this supposed conflict does not undermine Plaintiff's adequacy to represent the class. Indeed, Plaintiff already articulated a plausible theory of liability: "Defendants' public commitment to ESG initiatives motivated the disloyal decision to invest Plan assets with managers who pursue non-economic ESG objectives through select investments that underperform relative to non-ESG investments, all while failing to faithfully investigate the availability of other investment managers

---

[33] *Id.* at 3.
[34] Specifically, the Court considered the following: "(1) the risk that unnamed class members will forfeit their right to pursue the waived claim in future litigation, (2) the value of the waived claim, and (3) the strategic value of the waiver." *Slade*, 856 F.3d at 412–13.
[35] Defs.' Opp. to Pl.'s Mot. for Class Certification 19–20, ECF No. 68.

whose exclusive focus would maximize financial benefits for Plan participants."[36] There may or may not be other proxy votes that Plaintiff asserts at the merits stage. But the voting patterns of other investment managers does not reveal an inherent conflict. Instead, it is an inquiry that bears on the merits of the ERISA claims.

Finding no conflicts of interest between Plaintiff and the class he seeks to represent, the Court otherwise finds no evidence that Plaintiff cannot zealously and competently represent the proposed class. Plaintiff also appears willing and able to assume an active role controlling the litigation and he has already taken steps to protect the interests of absentees by refining the class definition. Accordingly, the Court concludes that Plaintiff carries his burden to show that the representation is adequate.

*       *       *       *       *

Class certification is natural in this ERISA case. There are more than 100,000 Plan participants and beneficiaries allegedly injured by Defendants' unlawful, Plan-wide misconduct. Anchored to the inherent representative nature of ERISA cases, Plaintiff's claims are typical of those of other proposed class members, and the common questions predominate over any individualized issues. Indeed, the liability and causation elements under Plaintiff's ERISA claims are all subject to class-wide common proof using Defendants' documents and record. To win at trial, no testimony or evidence is needed form any member of the class since the entire focus is on Defendants' course of conduct pertaining to the entire Plan. And there are no unique defenses or conflicts that would prevent Plaintiff from serving as an adequate representative of the class. Plaintiff and his counsel represent that they are capable and already active in their pursuit of relief for Plan participants and beneficiaries. Therefore, the Court concludes that Plaintiff satisfies all of

---

[36] Feb. 21, 2024 Order Denying Mot. to Dismiss 12, ECF No. 98.

Rule 23(a)'s requirement for class certification as to the ERISA claims. The Court now considers whether the requirements of Rule 23(b) are met.

### C.  Rule 23(b)

Class certification is appropriate if the requirements of Rule 23(a) are satisfied *and* the class action falls within one of the class action types identified in Rule 23(b). *See* Fed. R. Civ. P. 23(b) (identifying three types of class actions that must apply to maintain a class action if Rule 23(a)'s requirements are also met). Plaintiff suggests that the proposed class fits under the class action types identified in (b)(1) or (b)(3).[37] Defendants dispute that either type of class action applies here.[38] The Court disagrees with Defendants. Plaintiff sufficiently demonstrates that a class action is warranted under Rule 23(b)(1)(A). As a result, the Court need not address Plaintiff's contention that the proposed class could also fall under Rule 23(b)(3).[39]

Rule 23(b)(1)(A) allows class certification where "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). This type of class action applies to "cases where the party is obligated by law to treat the members of the class alike[.]" *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (quotations and citation omitted). Courts have found that the "language of subdivision (b)(1)(A), addressing the risk of inconsistent adjudications, speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a

---

[37] Pl.'s Br. in Support of Mot. for Class Certification 14–19, ECF No. 59-1.
[38] Defs.' Opp. to Pl.'s Mot. for Class Certification 30, ECF No. 68.
[39] When a class satisfies both (b)(1) and (b)(3), (b)(1) is exclusive and must be used. Indeed, "[t]o hold otherwise would 'directly contraven[e]' the stated purpose" of Rule 23(b)(1) by risking inconsistent and incompatible adjudications. *Leber*, 323 F.R.D. at 165 (quoting Wright, Miller, & Kane, 7AA Fed. Prac. & Proc. Civ. §1772 (3d ed. 2017)); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995). However, the Court notes that Plaintiff's proposed class would also likely qualify under Rule 23(b)(3) based on a sufficient showing of the requisite predominance and superiority prongs.

fiduciary responsibility, to treat the members of the class alike." *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006) (cleaned up). That is why courts routinely grant certification under Rule 23(b)(1) in ERISA fiduciary-breach actions since "the distinctive 'representative capacity' aspect of ERISA suits to remedy a breach of fiduciary duty makes litigation of this kind a 'paradigmatic' example of a Rule 23(b)(1) class.'" *Chavez v. Plan Benefit Servs., Inc.*, No. 17-cv-00659, 2022 WL 1493605, at *20 (W.D. Tex. Mar. 29, 2022) (quoting *Beacon*, 282 F.R.D. at 342). And courts in the Fifth Circuit have likewise certified classes under Rule 23(b)(1)(A) in cases involving similar improper investment allegations. *E.g.*, *Enron Corp.*, 2006 WL 1662596, at *15.

In this proposed ERISA class action, Defendants owed fiduciary duties to the Plan and, therefore, all participants and beneficiaries—in other words, all putative class members. 29 U.S.C. § 1104(a)(1). When discharging ERISA's mandatory duties, Defendants were required to treat all participants—and, hence, all class members—alike. *Cf. Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 577 (D. Minn. 2014) (certifying class under Rule 23(b)(1)(A) in ERISA case about propriety of plan investments). Because Plaintiff seeks to hold liable the fiduciaries who have breached their obligations and enjoin them from future ERISA violations, a "judgment removing the fiduciaries in one lawsuit would be inconsistent with a judgment in another permitting them to stay."[40] *Langbecker v. Electronic Data Sys. Corp.*, 476 F.3d 299, 318 (5th Cir. 2007). Similarly, a judgment that reforms the Plan in one case would conflict with a judgment in another case not requiring reformation. For this reason, the Court finds that "[c]ertification under Rule 23(b)(1)(A)

---

[40] *See* Pl.'s Am. Compl. ¶ 131, ECF No. 41 (alleging that Defendants breached their fiduciary duties by, for example, "failing to remove fiduciaries whose performance was inadequate in that they continued to maintain imprudent, costly, and poorly performing investments within the Plan, all toe the detriment of the Plan and Plan participants and beneficiaries")

is . . . warranted" in this litigation to avoid "contradictory rulings" and "inconsistent dispositions that would prejudice [a party]." *Enron Corp.*, 2006 WL 1662596, at *15.

Applying Rule 23(b)(1)(A)'s component parts in this case, the Court finds that Plaintiff meets each requirement. *See* FED. R. CIV. P. 23(b)(1)(A) ("[P]rosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."). Class members uniformly suffered the same injuries due to the alleged breach of fiduciary duties by Defendants. These breaches harmed all participants and beneficiaries of the Plan since it was managed as a single entity. Indeed, it is well-established in the Fifth Circuit that Defendants "duties rise and fall with all plaintiffs." *Cunningham*, 2019 WL 275827, at *8. Because of these harms, each class member would be entitled to the same form of relief after a trial. Separate actions arising from these harms carry the high risk of inconsistent adjudications and incompatible standards. And should separate prosecution arise on behalf of the Plan—brought by one or more of the many thousands of individual class members—there is a strong probability that "varying adjudications over [D]efendant[s'] alleged breach and how to measure the damages" would result. *Sacerdote*, 2018 WL 840364, at *6 (finding certification under Rule 23(b)(1)(A) appropriate in an ERISA action for fiduciary breach). These separate actions would generate incompatible standards of conduct that would potentially impact the Plan's management and administration. Because it is difficult to envision circumstances more apt for class certification, the Court finds that the proposed class action satisfies Rule 23(b)(1)(A)'s requirements.

## IV.    SCOPE OF THE CLASS

Having determined that class certification is appropriate, the Court now confirms the scope of the class to be certified. Because Plaintiff elects to pursue only one of his two theories of liability, the Court adopts Plaintiff's revised class definition in an effort to protect absent class members from the full preclusive effect of a judgment on any related claims beyond this litigation:

> All participants and beneficiaries of the American Airlines, Inc. 401(k) Plan and/or the American Airlines, Inc. 401(k) Plan for Pilots from June 1, 2017 through the date of judgment (the "Class Period"), excluding (i) Plan participants and beneficiaries who invested solely through the Plan's self-directed brokerage account, and (ii) Defendants and any of their directors, officers, or employees with responsibility for the Plans investment or administration (the "Class").[41]

## V.    APPOINTMENT OF CLASS COUNSEL

Finally, Plaintiff requests that the Court appoint its counsel to represent the class.[42] Under Rule 23(g), "a court that certifies a class must appoint class counsel." FED. R. CIV. P. 23(g)(1). In doing so, "the court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A).

The Court finds that Plaintiff's counsel is qualified to represent the interests of the class. Plaintiff's counsel has experience litigating complex matters and has expertise in this type of litigation. Plaintiff's counsel has identified and investigated all claims, along with committing sufficient resources to this action. Defendants do not oppose Plaintiff's request to appoint class counsel. Accordingly, the Court **APPOINTS** Plaintiff's counsel as class counsel.

---

[41] Pl.'s Reply in Support of Mot. for Class Certification 1–2, ECF No. 76.
[42] Pl.'s Br. in Support of Mot. for Class Certification 13, ECF No. 59-1.

## VI.    CONCLUSION

Based on the foregoing reasons, the Court concludes that the elements of Rule 23(a) and 23(b) are satisfied. The Court also finds the class sufficiently ascertainable. As a result, class certification is proper. Therefore, Court **GRANTS** Plaintiff's Motion for Class Certification (ECF No. 59). Plaintiff may proceed in this case as representative of himself and the following class:

> All participants and beneficiaries of the American Airlines, Inc. 401(k) Plan and/or the American Airlines, Inc. 401(k) Plan for Pilots from June 1, 2017 through the date of judgment (the "Class Period"), excluding (i) Plan participants and beneficiaries who invested solely through the Plan's self-directed brokerage account, and (ii) Defendants and any of their directors, officers, or employees with responsibility for the Plans investment or administration (the "Class").

Additionally, the Court **APPOINTS** Plaintiff's counsel as class counsel in this matter.

**SO ORDERED** on this **22nd day** of **May, 2024**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**