UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **BRYAN P. SPENCE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00552-O |
| | § | |
| **AMERICAN AIRLINES, INC.,** and | § | |
| **AMERICAN AIRLINES** | § | |
| **EMPLOYEE BENEFITS** | § | |
| **COMMITTEE,** | § | |
| | § | |
| Defendants. | § | |

## FINAL JUDGMENT

This Judgment is issued pursuant to Fed. R. Civ. P. 58(a).

This case concerns the fiduciary duties of prudence and loyalty owed under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Following a bench trial, the Court issued its Findings of Fact and Conclusions of Law holding Defendants American Airlines, Inc. ("AA") and the Employee Benefits Committee (the "EBC" and, together with AA, "Defendants") liable for fiduciary misconduct while managing retirement plans (the "Plan") for AA employees. Specifically, the Court found that Plaintiff proved by a preponderance of the evidence that Defendants breached their duty of loyalty by failing to act solely in the Plan's best financial interests—namely, by allowing BlackRock and its focus on environmental, social, and governance ("ESG") investing to influence the Plan. Despite evidence of disloyalty, the Court did not find a breach of the duty of prudence because Defendants acted in accordance with prevailing industry practices, which was fatal to Plaintiff's breach of prudence claim. After reaching a

decision on liability, the Court deferred ruling on the appropriate remedy pending supplemental briefing from the parties.

Having now carefully reviewed the trial record, applicable law, and the parties' supplemental briefs, the Court concludes that Plaintiff failed to sufficiently establish actual monetary losses to the Plan. The Fifth Circuit has long required that ERISA remedies reflect both the statutory text and equitable principles. Under *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 300 (5th Cir. 2000), a plaintiff must establish a causal link between the fiduciary breach and actual economic loss before monetary relief may be awarded. Plaintiff has not carried that burden here. *See McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237–38 (5th Cir. 1995) (holding that burden shifting does not excuse a plaintiff's obligation to show a prima facie loss).

At the same time, ERISA § 409(a) authorizes "other equitable or remedial relief" where appropriate. The Fifth Circuit has recognized that equitable remedies may be necessary even when losses cannot be quantified in order to prevent recurrence of disloyal conduct and to protect participants prospectively. *See Perez v. Bruister*, 823 F.3d 250, 266–67 (5th Cir. 2016). Consistent with *Perez*, the Court determines that it is necessary to award equitable relief to ensure that Defendants and their investment managers act solely for the pecuniary benefit of the Plan and implement compliance measures to ensure fidelity to ERISA's fiduciary standards. Even so, the Court narrowly tailors the injunction to avoid overbreadth that could disturb the Plan's investment structure and undermine proper management of the Plan.

Accordingly, the Court **PERMANENTLY ENJOINS** Defendants, including their officers, employees, and agents, as follows:

1. AA shall not permit any proxy voting, shareholder proposals, or other stewardship activities on behalf of the Plan that are motivated by or directed towards non-pecuniary

ends, including but not limited to ESG-oriented investment management and objectives, that are not in the exclusive best financial interest of Plan participants and beneficiaries.

2. AA shall hire and appoint at least two independent members of the EBC to serve as a member of the EBC for five (5) years from the date of this order. The independent members of the EBC shall not have any connection or relationship, financial or otherwise, with BlackRock, Aon, or any other administrator, advisor, and/or investment manager of Plan assets, including any of their subsidiaries and/or affiliated entities.

3. The new EBC, or any group that may succeed it, by taking over its responsibilities for the Plans, shall:

    a. Provide a written report on an annual basis to each Plan participant identifying any financial transactions and/or financial relationships between AA and each administrator, advisor, and/or investment manager of Plan assets, including any of their subsidiaries and/or affiliated entities.

    b. Annually certify in writing to each Plan participant that the EBC, and each administrator, advisor, and/or investment manager of Plan assets, that they will only and solely pursue investment objectives based on provable financial performance, not DEI, ESG, sustainability, or any other nonfinancial criteria.

    c. Annually certify in writing to each Plan participant that the EBC, and each administrator, advisor and/or investment manager of Plan assets, that they will only allow proxy votes to be cast on behalf of Plan participants solely to maximize the long-term financial returns of Plan participants' investments, and not DEI, ESG, sustainability, or other non-financial criteria.

4. AA shall publish on its corporate website in a location easily accessible to Plan participants information concerning membership of AA, and each administrator, advisor, and/or

investment manager of Plan assets, in UN PRI, Net Zero Asset Managers Initiatives, Ceres Investor Network, or any organization principally devoted to achieving DEI, ESG, climate-focused investment or stewardship objectives. The webpage shall link to the terms and conditions of each such membership, including any sign-on statements or disclaimers made by AA and each administrator, advisor, and/or investment manager of Plan assets. And such membership shall be provided to the independent members of the EBC for careful scrutiny of compliance with (2) above.

5. AA is hereby enjoined from using BlackRock, or any other asset manager that is a significant shareholder of AA (who owns 3% or more of AA's shares) or who holds any of AA's fixed debt, to manage Plan assets without policies preventing those who maintain the corporate relationship with the asset manager from also being Plan fiduciaries or playing a role in managing the Plan.

The Court **DENIES** Plaintiff's request for monetary damages because Plaintiff has not sufficiently established that the Plan suffered actual, compensable financial losses as a result of Defendants' breach. Furthermore, the Court **DENIES** Plaintiff's request for disgorgement, fee reimbursement, and other monetary equitable relief because such relief is not supported by the trial record. Finally, the Court **DENIES** Defendants' motion for leave to file a surreply. Defendants' objections to Plaintiff's supplemental brief are well-taken and further briefing on these objections is unnecessary.

Any other relief not expressly granted herein is **DENIED**.

**SO ORDERED** this **30th** day of **September, 2025**.

*/s/ Reed O'Connor*
Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**